[No. S163430. May 7, 2009.]

THERESA KEENER et al., Plaintiffs and Respondents, v.
JELD-WEN, INC., et al., Defendants and Appellants.

COUNSEL

McAtee • Harmeyer, Jeff G. Harmeyer and Greg A. McAtee for Defendants and Appellants.

Reed Smith, Paul D. Fogel, Dennis Peter Maio; The Zucker Law Firm, Andrew J. Zucker; The Basile Law Firm and Jude Basile for Plaintiffs and Respondents.

OPINION

**GEORGE, C. J.**—We granted review to address issues concerning a trial court's polling of a civil jury pursuant to Code of Civil Procedure section 618 (hereafter section 618) after rendering a verdict. This statute provides that if "more than one-fourth of the jurors disagree" with a verdict upon polling, "the jury must be sent out again" for further deliberation, *"but if no disagreement is expressed, the verdict is complete and the jury discharged from the case."* (Italics added.) We conclude that a juror's *silence* at polling, brought about by the trial court's failure to poll that particular juror on one of several special verdict questions, does not constitute an *expressed disagreement* with the verdict under section 618, and hence does not prevent the trial court from accepting the verdict as complete and discharging the jury. We further conclude that a party's failure to object to incomplete polling before the jury is discharged forfeits any claim of irregularity in polling procedure.

## I

Scott Keener was killed while riding his motorcycle when a truck driven by Hector Solis, an employee of Jeld-Wen, Inc. (collectively, defendants), pulled away from a stop sign directly into Keener's path. Keener's survivors (plaintiffs) commenced this action against defendants.

After deliberating for more than two days, the jury informed the bailiff that it had reached a verdict and then reassembled in the courtroom. When the trial judge inquired whether the jury had arrived at a verdict, the foreperson, Raul Santana, who had signed and dated the multiple-question verdict form, answered in the affirmative. The trial judge explained: "What I'm going to do next is look at the verdict form and see if it's in order. Once I determine it's in order, I will have . . . my clerk . . . read the verdict form after which I'll ask you as a group whether this was your verdict as read. [¶] Because it is a civil case, it requires nine of 12 on each of the questions to have . . . a partial verdict. So what will ultimately happen is I will poll you individually asking you whether [on] a particular question you voted yes or no. And I hope you

have with you a cheat sheet so you can refer to it if you need to in telling me how you voted on each of the questions.[1] [¶] Assuming that is done correctly, I will then ask my clerk to what is called record the verdict, meaning put a stamp on it. I will then excuse you as a jury, give you a brief admonition, and then you're done. [¶] So give me a moment to review the verdict form."

The clerk then read aloud the three-page verdict form. It was divided into nine questions, some with subparts. The jurors' responses—as reflected on the verdict form—revealed, in questions 1 and 2, that the jury found Hector Solis was negligent, and that his negligence was a substantial factor in causing Keener's death. In questions 3 through 6, the jurors assessed plaintiffs' damages. Question 7 asked, "Was Scott Keener negligent?"[2] Question 8 asked, "Was Scott Keener's negligence a substantial factor in causing his death?" Question 9 asked, "What percentage of responsibility do you assign to: [¶] Hector Solis ___% [¶] Scott Keener ___% . . . ." The verdict form further revealed that the jury had found both parties were negligent, the negligence of each was a substantial factor in causing Keener's death, and plaintiffs suffered economic and noneconomic damages totaling $4,940,000. Finally, the jury found that defendant Solis bore 80 percent of the responsibility for the death, and Keener bore 20 percent of the responsibility for his own death.

The trial judge then addressed the jury: "Ladies and gentlemen, as a group, is this and was this your verdict as read? You can say yes or no depending on how you voted." The reporter's transcript reflects that in response, "the jurors answered collectively." The judge explained that he would individually ask each juror to confirm his or her vote on each of the nine questions and subquestions, and then proceeded to poll each juror in numerical order. During the polling, eight jurors—Nos. 1, 2, 3, 5, 8, 9, 11, and 12—answered all questions consistently with the special verdict form. Four jurors, however, gave answers different in various respects from those set out in the verdict form.

In response to the first special verdict form question, Juror No. 4 responded with a finding that Solis was *not* negligent. The trial judge confirmed that vote, and then dispensed with immediately polling Juror No. 4 concerning

---

[1] Previously, in instructing the jury, the trial court stated: "Each of you may be asked in open court how you voted on each question. [¶] For that purpose and . . . toward that possibility, you're each given a colored copy of the special verdict form where you may, if you want, record your personal votes on each of the questions if in fact you do vote on those questions."

[2] This part of the verdict form, tracking question 1, also provided: "If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form."

any of the other eight special verdict form questions, instead proceeding to poll the next juror. The vote of Juror No. 6, in response to verdict form question 9, was to apportion 90 percent of responsibility to Solis, and only 10 percent to Keener. Juror No. 7 (Brown) answered all special verdict form questions 1 through 6 consistently with the verdict form, but in response to question 7, stated that he had voted to find Keener was *not* negligent. At that point the trial judge ended the polling of Brown, and did not ask whether (or if so, how) he voted on special verdict form questions 8 (Keener's negligence as a substantial factor) or 9 (apportionment of responsibility). Juror No. 10 (Foreperson Santana)—like Juror No. 4—stated, in response to the first verdict form question, that he found Solis was *not* negligent. The trial judge commented: "And I may come back to [Jurors Nos.] 4 and 10 later but not yet." The trial judge continued to poll the remaining jurors.

Thereafter, immediately following completion of the polling of Juror No. 12, the trial judge inquired: "Mr. Foreperson, for those that voted no as to [verdict form question] No. 1 [(negligence of Solis)], did the two who voted no participate in any of the damage calculations?" Upon confirmation that the two jurors did so, the trial judge returned to Juror No. 4 and polled concerning that juror's votes on special verdict form questions 3 through 9. Juror No. 4 stated that with respect to apportionment of responsibility (question 9), the juror's vote was "Mr. Solis, 40 percent. Mr. Keener, 60 [percent]." Finally, the trial judge returned to Jury Foreperson Santana (Juror No. 10) and polled concerning his votes on special verdict form questions 3 through 9. With respect to apportionment of responsibility (question 9), Foreperson Santana stated his vote as "50 percent for both."

Apparently, no one noticed that throughout this process, although the polling revealed a clear three-quarters majority for special verdict form questions 1 through 8, the polling revealed only eight votes for the verdict form's stated "80-20" apportionment of responsibility between Solis and Keener. On that allocation issue, two jurors—Jurors Nos. 4 and 10 (Foreperson Santana)—voted respectively to apportion responsibility between Solis and Keener at 40-60 percent and 50-50 percent. One juror—Juror No. 7 (Brown)—never was asked to state a vote on apportionment and hence, in essence, this juror was silent as to that polling question. One other panelist—Juror No. 6—confirmed in the polling a vote to apportion fault 90 percent to Solis and 10 percent to Keener.

Immediately after repolling Jury Foreperson Santana (Juror No. 10), the trial judge asked the clerk to record the verdict and, at length, thanked the jurors and then discharged them. After resolving a few remaining housekeeping matters with counsel, the trial judge asked counsel whether there was "anything further." Attorneys for each side replied there was not.

A few days later, the trial judge learned (the record does not reflect how) that he had failed to poll Juror Brown on both the issues of negligence and apportionment.[3] The judge convened a hearing and informed the parties of the omission. Thereafter, defendants moved to invalidate the apportionment verdict, submitting declarations from Jury Foreperson Santana and Juror No. 2, each of whom declared that during deliberations, Juror No. 7, Brown, had "refused to find any negligence attributable to Mr. Keener" and had "refused to answer the allocation of liability on Question No. 9 of the Special Verdict Form." Neither of these declarants, however, disclosed what had been his or her own apportionment vote at the time the verdict form was signed in the jury room.[4] Plaintiffs moved to strike the jury declarations on the ground they implicated Juror Brown's "mental processes" and were therefore inadmissible under Evidence Code section 1150, subdivision (a).[5] In the alternative, plaintiffs asked the court to consider the declarations of three other panelists, each of whom stated that when the verdict form was signed, there were at least nine votes to support the 80-20 apportionment verdict.

The trial court ordered the declarations of Jury Foreperson Santana and Juror No. 2 stricken as inadmissible, and declined to consider plaintiffs' proffered declarations. The court denied defendants' motion to invalidate the apportionment verdict, concluding that defendants had "waived any right to object to any irregularity in the polling procedure by failing to timely object before the verdict was entered." The court entered judgment in the amount of $3,952,000 (that is, 80 percent of $4,940,000) in accordance with the written special verdict form.

Defendants moved for a new trial on several bases, including the ground that the apportionment verdict was invalid because the polling was incomplete and there were insufficient polled votes to uphold the written verdict's 80-20 apportionment. Defendants submitted new declarations by Jury Foreperson

---

[3] The failure to poll Juror Brown regarding whether Keener's negligence was a substantial factor in his own death posed no significant problem because, even without Brown's vote, there were 11 votes supporting the verdict on that element. The failure to poll Brown as to *apportionment* raised an issue because, without Brown's vote, and in light of the polled vote of Juror No. 10 (Foreperson Santana, who may have changed his vote during polling), there were only eight polled votes for the 80-20 apportionment.

[4] Each of the two trial defense counsel also filed declarations, both stating that until the trial court mentioned that Juror Brown had not been polled on two questions, the respective declarant was unaware that the polling had been incomplete.

[5] That subdivision provides: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." (Evid. Code, § 1150, subd. (a).)

Santana and Juror No. 2. Although the new declarations, like the originals, were silent as to Santana's apportionment vote in the jury room, both stated that Juror Brown announced to the rest of the jury "that he was 'abstaining' from voting on Question No. 9," and that Brown refused to answer the apportionment question during deliberations. Plaintiffs opposed the motion for new trial and submitted new declarations by four members of the jury (among them, Jurors Brown and Scopinich), all of whom stated, in essence, that by the end of the deliberations there were at least nine jurors—including Jury Foreperson Santana—who had voted in the jury room for the 80-20 apportionment. In his proffered declaration, Juror Brown further stated: "I voted for a 100%-0% apportionment, with 100% for Mr. Solis and 0% for Mr. Keener." Juror Scopinich declared that "Mr. Brown dissented from [the jury's 80-20 apportionment vote] and remained at 100% for Mr. Solis and 0% for Mr. Keener." Scopinich also declared that when she heard Foreperson Santana state his "50-50" apportionment vote during polling, "[m]y head snapped up," because Santana's statement "was inconsistent with the last vote he had expressed on that issue in the jury room."

The court denied defendants' motion for new trial. In doing so, the court considered the various declarations, but found them admissible only with regard to "[w]hether a particular juror gave a yes or no vote on a particular issue." As to the polling issue, the court found once again that defendants "waived" any error by failing to object prior to the discharge of the jury. The court also concluded, in any event, there was no defect in the verdict, because Jury Foreperson Santana had provided the ninth vote in the jury room.[6]

Defendants appealed, arguing, among other things, that the special verdict on apportionment, which was based upon the written verdict form, lacked sufficient votes in light of the circumstances that Jury Foreperson Santana may have changed his vote at the time of polling and that Juror Brown failed to state his vote at the time of polling. The Court of Appeal rejected most of defendants' claims but ruled for defendants on the apportionment issue. In that regard, the appellate court reached three principal conclusions. First, the court determined, "the trial court erred [under Evidence Code section 1150] in accepting the juror declarations to inquire into and resolve the results of the jury's decisionmaking process, and also when it made a credibility

---

[6] The trial court based this finding upon the four juror declarations submitted by plaintiffs, which the court found "highly credible, especially in light of the fact that Mr. Santana's declaration is conspicuously silent as to his vote on apportionment." The court stated: "His assertion, as jury foreperson, that the jury had in fact reached a verdict, coupled with the declarations just cited lead the court to conclude that there were, in fact, nine votes for an 80-20 apportionment and that one of those nine votes was Mr. Santana's notwithstanding his inexplicable and dubious statement at polling that he had voted for a 50-50 apportionment." The court found irrelevant and inadmissible the declarations of Woods and Santana and the portion of Brown's declaration stating his apportionment vote was 100-0.

determination that [Jury Foreperson] Santana could not . . . have voted other than 80-20 at any relevant time." Second, the Court of Appeal found, the verdict was not "complete" under section 618, because the missing polled apportionment vote of Juror No. 7, Brown, constituted "essentially a disagreement" with the apportionment verdict; accordingly, the appellate court concluded, the polling revealed that at least four jurors disagreed with the apportionment aspect of the special verdict, and hence the verdict should not have been accepted and the jury discharged. Third, the Court of Appeal reasoned, defendants' failure to object at trial to the incomplete polling did not constitute "a waiver of an apparent defect" because, the appellate court found, the polling was confusing and defense counsel had "no realistic opportunity" to object to the defective procedure; in any event, the appellate court suggested, defendants' claim of a verdict supported by less than nine votes is too "severe" a defect to be subject to waiver. Accordingly, the appellate court reversed the judgment in part, "with directions to the trial court to conduct such further proceedings as will implement the existing special verdict as to its first eight questions and answers, while allowing appropriate additional proceedings on the issue of apportionment of liability only."

Plaintiffs' petition for review raised only two issues, the second and third described immediately above, and thus we address those issues only.[7] Specifically—and, as explained below, significantly—the appellate court's determination that all of the juror declarations (whether submitted by defendants or by plaintiffs) were inadmissible under Evidence Code section 1150 on the polling/apportionment issue is not before us in this proceeding.

## II

California Constitution, article I, section 16 provides: "Trial by jury is an inviolate right . . . , but in a civil cause three-fourths of the jury may render a verdict." When a jury is composed of 12 persons, it is sufficient if *any* nine jurors arrive at each special verdict, regardless of the jurors' votes on other special verdict questions. (*Resch v. Volkswagen of America, Inc.* (1984) 36 Cal.3d 676, 679 [205 Cal.Rptr. 827, 685 P.2d 1178] (*Resch*) [each juror should participate as to each special verdict submitted]; see also *Juarez v. Superior Court* (1982) 31 Cal.3d 759, 767–768 [183 Cal.Rptr. 852, 647 P.2d 128] (*Juarez*).)[8]

---

[7] Defendants did not file an answer to the petition for review (Cal. Rules of Court, rule 8.500(a)(2)) and hence did not ask this court to consider any additional issue resolved by the Court of Appeal, in the event this court were to grant review. (*Ibid.*; *id.*, rule 8.504(b).)

[8] Moreover, our decision in *Resch, supra,* 36 Cal.3d 676, 680, permits jurors to cast *inconsistent votes* on individual questions—as did Jurors Nos. 4, 7, and 10 in the present case.

The polling process is designed to reveal mistakes in the written verdict, or to show "that one or more jurors acceded to a verdict in the jury room but was unwilling to stand by it in open court." (*People v. Thornton* (1984) 155 Cal.App.3d 845, 859 [202 Cal.Rptr. 448].) Polling procedure applicable to civil matters is set forth in section 618, which provides: "When the jury, or three-fourths of them, have agreed upon a verdict, they must be conducted into court and the verdict rendered by their foreperson. The verdict must be in writing, signed by the foreperson, and must be read to the jury by the clerk, and the inquiry made whether it is their verdict. Either party may require the jury to be polled, which is done by the court or clerk, asking each juror if it is the juror's verdict. *If upon inquiry or polling, more than one-fourth of the jurors disagree thereto, the jury must be sent out again, but if no disagreement is expressed, the verdict is complete and the jury discharged from the case.*" (Italics added.)[9] Sections 1163 and 1164 of the Penal Code similarly address jury polling in the criminal context.[10]

■ It is established that a juror may change his or her vote at the time of polling. (*Chipman v. Superior Court* (1982) 131 Cal.App.3d 263, 266 [182 Cal.Rptr. 123] [trial court erred by failing to credit a juror's changed vote at polling and to send the jury back for further deliberations].) Any juror is permitted to "declare, even at the last moment, that the verdict, as presented, is not his [or her] verdict," as long as the juror does not change his or her vote "merely because he [or she] mistook the legal effect of his verdict." (*Fitzpatrick v. Himmelmann* (1874) 48 Cal. 588, 590.)[11] Under these authorities, Jury Foreperson Santana was entitled to change his vote up until the time the verdict was recorded, and to have that revised vote counted. The record

---

[9] This is the current wording of the statute, as amended in 2007. (Stats. 2007, ch. 263, § 7.) At the time of trial in the present case, the section read slightly differently—for example, it employed gender-specific language ("foreman" instead of "foreperson"), and the concluding phrase read, "but if no disagreement *be* expressed" instead of "but if no disagreement *is* expressed." (Stats. 1978, ch. 258, § 1, p. 542, italics added.) These minor changes, enacted along with other technical amendments to various codes upon the recommendation of the California Law Revision Commission, are not material.

[10] Penal Code section 1163 provides: "When a verdict is rendered, and before it is recorded, the jury may be polled, at the request of either party, in which case they must be severally asked whether it is their verdict, and if any one answer in the negative, the jury must be sent out for further deliberation." Penal Code section 1164, subdivision (a), contains language identical to the key passage of section 618—differing only in that it also reflects the unanimity requirement for criminal verdicts. It reads: "When the verdict given is receivable by the court, the clerk shall record it in full upon the minutes, and if requested by any party shall read it to the jury, and inquire of them whether it is their verdict. *If any juror disagrees, the fact shall be entered upon the minutes and the jury again sent out; but if no disagreement is expressed, the verdict is complete, and the jury shall . . . be discharged from the case.*" (Pen. Code, § 1164, subd. (a), italics added.)

[11] Once the polled verdicts are recorded, however, jurors are not permitted to change their votes, even if the jury has not yet been discharged. (*People v. Bento* (1998) 65 Cal.App.4th 179, 187–193 [76 Cal.Rptr.2d 412].)

does not reflect whether Jury Foreperson Santana or any other juror changed his or her vote at the time of polling. But what is evident is that neither the trial judge nor the parties noticed, until well after the jury was discharged, that Juror Brown, when polled, was not asked the final special verdict question concerning apportionment.

## III

### A

■ We address first the assertion of defendants that the trial court erred under section 618 by accepting the verdict as complete and thereafter discharging the jury. That statute (quoted *ante*, at p. 256), provides, in essence, that upon polling, a civil verdict *must be upheld unless "more than one-fourth of the jurors disagree thereto"*; it states that absent such *"disagreement . . . expressed, the verdict is complete."* (Italics added.) As plaintiffs observe, section 618 effectively creates a "rebuttable presumption: If a verdict *appears* complete, it *is* complete *unless* there is an affirmative showing [during polling] to the contrary."

#### 1

Although in the present case, when polled, only three jurors (that is, "not more than one-fourth" of the jurors) "expressed" their "disagreement" with the apportionment verdict, the Court of Appeal below concluded that Juror Brown's "missing vote is essentially a disagreement," and hence "there are more than three jurors who 'disagreed' under section 618." But by remaining silent when the court failed to poll him concerning the apportionment verdict, Juror Brown did not thereby "express" any "disagreement" with the verdict—and hence the polling did not disclose that "more than one-fourth of the jurors disagree[d] with the apportionment verdict." Indeed, if the Legislature had intended that a juror's mere silence at polling, caused by the trial court's failure to poll that particular juror on one of several special verdict questions, would be sufficient to establish "expressed" "disagreement" with a verdict, we expect the Legislature would have written section 618 quite differently, such as by employing language used by legislatures in other jurisdictions in enacting similar statutes, some of which, unlike section 618, effectively equate a juror's silence with disagreement.[12]

---

[12] For example, Oregon provides: "If fewer jurors answer in the affirmative than the number required to render a verdict, the jury shall be sent out for further deliberations." (Or. Rules Civ. Proc., rule 59(G)(3); see also 2009 Conn. Practice Book, Superior Court—Procedure in Civil Matters, § 16-32 ["If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or they may be discharged."]; Md. Rules, rule 2-522(b) ["If the poll discloses that the jury, or stated majority, has not concurred in the

By contrast, California's polling statutes (§ 618, governing civil cases, and Pen. Code, §§ 1163 & 1164, governing criminal cases)—which, as noted, require that a verdict be upheld absent "disagreement . . . expressed" by the polled jurors—are very similar to those of at least 19 other jurisdictions that require *affirmative* expressions of disagreement at polling in order to preclude completion of a verdict. At least eight states have statutes or rules providing that a jury must be required to resume deliberations if, upon polling, a requisite number of jurors *"answer* in the negative" or words to that effect;[13] and at least 11 other states, like California, provide that a jury must be required to resume deliberations if, upon polling, a requisite number of jurors "disagree" or "express disagreement," or words to that effect.[14] We have

---

verdict, the court may direct the jury to retire for further deliberation . . . ."]; Nev. Rev. Stat. Ann. § 175.531 [essentially same as Or. provision]; N.J. Rules of Court, pt. I, § 1:8-10 ["If the poll discloses that there is not . . . concurrence by the number required . . . in a civil action, the jury may be directed to retire for further deliberations . . . ."]; Wn. Rev. Code § 4.44.390 ["If it appears [upon polling] that the verdict is insufficient because the required number of jurors have not reached agreement, the jurors may be returned to the jury room for further deliberation."].)

[13] (Ala. Code § 12-16-15 [if, upon polling, "any [jurors] answer in the negative, the jury must be sent out for further deliberation"]; Ark. Code § 16-64-119 [essentially same]; Neb. Rev. Stat. § 25-1124 [essentially same]; N.D. Cent. Code § 28-14-23 [essentially same]; Okla. Stat. tit. 12, § 585 [essentially same]; S.D. Codified Laws § 15-14-29 [essentially same]; Tex. Rules Civ. Proc., rule 294 [if, upon polling, "any juror shown by the juror's signature to agree to the verdict should answer in the negative, the jury shall be retired for further deliberation"]; Wyo. Code Civ. Proc. § 1-11-213 [essentially same as Ala. provision and others listed above].)

[14] (Ariz. Rules Civ. Proc., rule 49(b) ["If any such juror disagrees as to the verdict, the jury shall again retire to consider the case further, but if no juror disagrees, the court shall receive the verdict . . . ."]; Fla. Rules Crim. Proc., rules 3.440 ["The clerk shall then read the verdict to the jurors and, unless disagreement is expressed by one or more of them or the jury is polled, the verdict shall be entered of record, and the jurors discharged from the cause"], 3.450 ["If a juror dissents, the court must direct that the jury be sent back for further consideration," but "[i]f there is no dissent the verdict shall be entered of record and the jurors discharged"]; Iowa Court Rules, Rules Crim. Proc., rule 2.22(5) ["If any juror expresses disagreement on such poll or inquiry, the jury shall be sent out for further deliberation . . . ."]; Kan. Crim. Proc. Code § 22-3421 ["If any juror disagrees, the jury must be sent out again; but if no disagreement is expressed, and neither party requires the jury to be polled, the verdict is complete . . . ."]; Ky. Rev. Stat. § 29A.320(3)(e) ["If more than the number of jurors required . . . as appropriate to the type of case being tried, answers in the negative, the jury must be sent out for further deliberation."]; *id.*, § 29A.320(3)(f) "If no disagreement is expressed or, in an appropriate case, an insufficient number disagree, the verdict is complete and the jury shall be discharged from the case."]; Minn. Stat. § 546.24 ["If any juror disagrees, the fact shall be entered in the minutes, and the jury again sent out"]; Mont. Code Ann. § 25-7-501(2) ["If upon such inquiry or polling more than one-third of the jurors disagree thereto, the jury must be sent out again, but if no such disagreement be expressed, the verdict is complete and the jury discharged from the case"]; N.M. Rules Civ. Proc. Dist. Cts. rule 1-038G ["[I]f upon . . . polling more than two of the jurors disagree thereto, the jury must be sent out again but if no such disagreement be expressed, the verdict is complete and the jury discharged from the case."]; N.Y. Crim. Proc. Law § 310.80 [if upon polling "any juror answers in the negative, the court must refuse to accept the verdict and must direct the jury to

found no decision interpreting any of these various statutes or rules that has held, as did the Court of Appeal below, that the silence of a juror related to a polling question, after not having not been asked that question, constitutes "disagreement" with the verdict—much less express disagreement.[15]

■ We agree with plaintiffs that section 618 requires *affirmative* disagreement—an utterance, statement, or some similar active conduct—of "more than one-fourth" of the jurors in order to prevent a trial court from finding the verdict to be complete and from then discharging the jury. (Cf. *Van Cise v. Lencioni* (1951) 106 Cal.App.2d 341, 348 [235 P.2d 236] [implicitly construing "expressed" in § 618 as meaning "disclosed"]; *People v. Wattier* (1996) 51 Cal.App.4th 948, 955 [59 Cal.Rptr.2d 483] [implicitly construing "expressed" in Pen. Code, § 1164 as meaning "answered"]; *People v. Laird* (1924) 69 Cal.App. 511, 515 [231 P. 596] [when the trial court asked the jurors whether the verdict was theirs, there was no response; the appellate court observed that "[n]o disagreement being expressed, the verdict became complete"].) ■ It follows that, as here, a juror's mere *silence* at polling, brought about by the trial court's failure to poll the juror on one of multiple special verdict questions, does not constitute an expressed disagreement with the verdict under section 618, and hence that this statute provides no basis under the present circumstances for a court to decline to uphold the verdict as set out in the jury's special verdict form.

---

resume its deliberation" but "[i]f no disagreement is expressed, the jury must be discharged from the case . . ."]; see also Ind. Code § 34-36-1-9 ["If a juror dissents from the verdict, the jury shall again be sent out to deliberate."]; Ohio Rev. Code Ann. § 2945.77 ["If one of the jurors upon being polled declare[s] that said verdict is not his verdict, the jury must further deliberate upon the case."].)

[15] Indeed, at least one decision, *Suggs v. Fitch* (Tex.App. 2001) 64 S.W.3d 658 (*Suggs*), implies that the silence of a juror in such a situation does not constitute "disagreement" with the verdict. Under Texas procedure, 10 of 12 jurors are required to render a civil verdict. In *Suggs*, the jury returned a written verdict signed by 10 jurors, including the foreperson. (*Id.*, at pp. 659–660.) As observed *ante*, in footnote 13, the Texas rule provides that if, upon polling, "any juror shown by the juror's signature to agree to the verdict should *answer* in the negative, the jury shall be retired for further deliberation." (Tex. Rules Civ. Proc., rule 294, italics added.) The record in *Suggs* revealed that upon polling, the trial court confirmed the votes of the first nine jurors who signed the verdict, but inexplicably failed to ask the 10th (the foreperson) his vote. (*Suggs, supra,* 64 S.W.3d at pp. 659–660.) On appeal, the losing party (the plaintiff at trial) asserted that this "irregularity" in the polling constituted reversible error. (*Id.*, at p. 659.) Apparently, the plaintiff did not argue that the resulting silence of the unquestioned jury foreperson constituted an "answer in the negative" (that is, disagreement with the verdict) under the Texas polling rule—evidently because such a contention would not be meritorious under the terms of the statute. Instead, the sole issue was whether the irregularity—incomplete polling—had been waived. The appellate court in *Suggs* concluded that such a claim was indeed waived by the plaintiff's failure to object at the time of polling. (*Id.*, at pp. 659–661.)

2

We briefly address defendants' contrary arguments. First, defendants claim that Juror Brown did indeed affirmatively express his disagreement with the verdict apportioning fault between Hector Solis and Scott Keener. They assert that based upon the polling, "the undisputed evidence established that only eight jurors voted in favor of Special Verdict No. 9." Defendants next argue that the declaration of Juror Brown, stating that he voted for a "100%-0% apportionment—100% for Mr. Solis and 0% for Mr. Keener," together with corroborating declarations by other jurors, demonstrate that Juror Brown did not vote in the jury room in favor of the 80-20 apportionment verdict. Based upon this information from the declarations (and Brown's in particular), defendants argue, it is "undisputed" and "established" that "Juror Brown did not supply the requisite ninth vote." As plaintiffs observe, however, defendants cannot properly rely upon Brown's, or any other juror's, declaration, because the Court of Appeal concluded that no declaration submitted below in this matter is admissible, in whole or in part; as noted above, the inadmissibility of the declarations is not before us for review, and we treat it as a settled question for purposes of this case. (See *ante*, at p. 255 & fn. 7.) Accordingly, the premise of defendants—that Juror Brown affirmatively expressed his disagreement with the 80-20 apportionment verdict—has not been, and cannot be, established by admissible evidence. The record leaves unresolved whether, at the time of polling or in the jury room, there were eight votes only (or whether there were nine or more votes) for the apportionment verdict.[16]

Defendants also assert that permitting an eight-vote civil verdict to stand would call into question the constitutionality, as applied, of section 618, and would violate article I, section 16 of the Constitution, which, as noted, requires a verdict of three-quarters of the jurors (meaning, in this case, nine of 12). Defendants argue that a special verdict based upon only eight votes is unconstitutional and cannot be upheld on appeal.

---

[16] There was silent acquiescence on the part of defendants to rulings—made both by the trial court and by the appellate court—that bear upon defendants' present claim of reversible error. Juror Brown, not having been asked by the trial court to state a vote on the apportionment issue, in essence was silent as to this polling question. That silence in turn was compounded by the silence of defendants' trial counsel, who failed to object to this incomplete polling, and further compounded by the silence of their appellate counsel, who failed to preserve for review in this court their present objections to the Court of Appeal's ruling that none of the juror declarations submitted to the trial court were admissible. Although purporting to rely upon these declarations in their briefing and oral argument in this court, counsel failed to contest—and hence to preserve for review—the Court of Appeal's ruling that all of the juror declarations (whether submitted by defendants or by plaintiffs) were inadmissible. (Cal. Rules of Court, rule 8.500.)

We observe initially that although we do not know how Juror Brown would have voted had he been polled specifically on the apportionment question, based upon his polled answers indicating that Solis was negligent and that Keener was not, it seems that Juror Brown most likely would have been amenable to assuring that plaintiffs obtain a verdict in their favor reflecting at least the jury's 80-20 apportionment.[17] Accordingly, had Juror Brown been questioned, a vote by him to uphold the jury's 80-20 apportionment verdict would have been consistent with his polled answers to the trial court's questions concerning liability for negligence.

In any event, as we observed immediately above, no admissible evidence supports defendants' assertion that nine of the jurors did not agree with the 80-20 apportionment verdict; the record reveals only that eight of the 11 jurors who were polled on that particular question so voted. Once again, defendants' premise—that there were eight votes only, and not nine votes or more in support of the verdict—has not been, and cannot be, established by admissible evidence. (*Walling v. Kimball* (1941) 17 Cal.2d 364, 373 [110 P.2d 58] [" 'an appellate court will never indulge in presumptions to defeat a judgment,' " nor will it " 'presume that an error was committed, or that something was done or omitted to be done which constitutes error' "; instead, " 'every intendment and presumption not contradicted by or inconsistent with the record on appeal must be indulged in favor of the orders and judgments of superior courts' "].)[18]

---

[17] Indeed, if, as defendants suggest, we were to reconsider the Court of Appeal's determination that the juror declarations were inadmissible, and credit the declarations—and hence, if we were to assume that Foreperson Santana changed his vote upon polling—it would be equally reasonable to assume, with regard to Juror Brown, that if his prior vote in the jury room had allocated fault 100 percent to defendants and 0 percent to Keener, when given the opportunity at polling Juror Brown might have altered his own vote in order to conform with the jury's 80-20 allocation. It is perhaps even more likely that Juror Brown would have done so *in light of* the assumed change in Foreperson Santana's vote, in order to preclude Santana, by a last-minute switch, from depriving plaintiffs of a verdict to which the jury had agreed.

[18] Finally, defendants advance two related arguments. First, they assert that section 618 requires that if polling occurs, each juror must be polled on each special verdict question—and they argue that in light of the circumstance that Juror Brown was not polled concerning his apportionment vote, under the statute the trial court could not properly thereafter accept the verdict as complete and discharge the jury. This argument appears to be in essence a variation of the argument addressed and rejected *ante*, in part IIIA1. In any event, we disagree with defendants' proposed statutory interpretation. The statute provides that if requested by a party, the trial court must poll each juror. Here the court did so (evidently on its own motion), but the court incompletely polled one of the jurors. We reject any suggestion that section 618 must be construed to bar completion of the verdict and discharge of the jury if, as here, the trial court happens to poll a single juror incompletely and no party objects or brings that defect to the court's attention for correction. Defendants have not cited any decision so construing section 618, nor have they cited any decision so construing any of the analogous out-of-state statutes

## B

Although section 618 did not bar the trial court from accepting the verdict as complete and discharging the jury, the circumstance remains that the record does indeed disclose that the court failed to poll Juror Brown on two of the special verdict questions, including the one related to the issue of apportionment. As observed earlier, the Court of Appeal below concluded that defendants' failure to object to the incomplete polling did not constitute a "waiver" of any such defect. In this court, defendants argue that the conclusion reached by the intermediate appellate court was correct, although defendants propose a slightly different analysis in support of that result.

We disagree with the Court of Appeal, and with defendants. As explained below, by not objecting to the incomplete polling, defendants forfeited[19] their right to assert that the failure to poll Juror Brown on the final special verdict question, related to apportionment, rendered that part of the verdict invalid.

### 1

█ We briefly review the relevant case law. In *People v. Lessard* (1962) 58 Cal.2d 447 [25 Cal.Rptr. 78, 375 P.2d 46] (*Lessard*), a capital case, the

listed *ante*, in footnotes 13 and 14. As explained *post*, in part IIIB, in our discussion of the issue of forfeiture, the burden in such a situation rests on the parties to object to the incomplete polling at a time when the defect can be corrected.

Second, defendants assert that the circumstance that three of the 11 jurors who were asked the apportionment question—that is, 27.2 percent of those 11 jurors—disagreed with the 80-20 allocation, signifies that more than one-fourth of the jurors did indeed "express" their "disagreement" with the apportionment verdict. As plaintiffs observe, however, section 618 assumes that the denominator in a 12-juror case is 12, and not a lesser number. In any event, defendants' argument, if accepted, would require that in all cases in which there is expressed disagreement of three of 11 jurors, the verdict would be deemed "incomplete," thereby removing a trial court's authority to discharge the jury—and effectively eliminating the well-established forfeiture rule, discussed *post*, in part IIIB. Once again, defendants fail to cite any decision so construing section 618, or any of the analogous out-of-state statutes listed *ante*, in footnotes 13 and 14. We decline to construe section 618 in the manner suggested by defendants.

[19] Plaintiffs observe that the correct term for the effect of the failure to object to the incomplete polling is "forfeiture," rather than "waiver." As we explained in *In re Sheena K.* (2007) 40 Cal.4th 875 [55 Cal.Rptr.3d 716, 153 P.3d 282]: "[T]he former term [(forfeiture)] refers to a failure to object or to invoke a right, whereas the latter term [(waiver)] conveys an express relinquishment of a right or privilege. [Citations.] As a practical matter, the two terms on occasion have been used interchangeably. [Citations.] Because it is most accurate to describe the issue as whether a party has forfeited a claim by failing to object in the trial court, 'in our subsequent discussion we generally shall refer to the issue as one of forfeiture.' [Citation.]" (*Id.*, at p. 880, fn. 1.) Although the term "waiver" is used in the Court of Appeal's opinion and other cases, consistent with our approach in *Sheena K.* we shall characterize the matter as one of forfeiture, rather than waiver.

original reporter's transcript suggested that one juror had not been polled. (*Id.*, at p. 452.) In response to the defendant's assertion on appeal that he was thereby deprived of his statutory right to a complete polling of the jury, we first noted that "a duly verified correction to the reporter's transcript shows that the twelfth juror was also independently polled and that he too stated that the announced verdict was also his individual verdict." (*Ibid.*) We then wrote: "Where a jury is *incompletely polled and no request is made for correcting the error, such further polling may be deemed waived by defendant, who cannot sit idly by and then claim error on appeal when the inadvertence could have readily been corrected upon his merely directing the attention of the court thereto.*" (*Ibid.*, italics added.)

Thereafter, in a civil case, *Silverhart v. Mount Zion Hospital* (1971) 20 Cal.App.3d 1022, 1029 [98 Cal.Rptr. 187], the court considered the responses of eight jurors in initial polling that the verdict was theirs, of three who said it was not, and of one who replied ambiguously, " 'Yes, I voted.' " After an immediate second polling, 10 jurors reported that the verdict was theirs, and two said it was not. The defendant did not object to the polling procedure or suggest that the jury should be reconvened. On appeal, the reviewing court held the defendant forfeited his right to challenge the polling, because "any impropriety could have been cured if raised on time . . ." and hence "the failure to object amounted to a waiver of the alleged impropriety or error." (*Ibid.*) The court in *Silverhart* further observed that "all reasonable inferences must be indulged on appeal to support, rather than to defeat, the jury's verdict and the judgment thereon . . ." (*ibid.*) and noted that, so viewed, no impropriety occurred in the polling or the verdict.

The most frequently quoted statement of the applicable rule is found in *Henrioulle v. Marin Ventures, Inc.* (1978) 20 Cal.3d 512 [143 Cal.Rptr. 247, 573 P.2d 465] (*Henrioulle*). There, the trial court granted the defendant a new trial because the *same* nine jurors had not assented to *each* question on the special verdict form. (*Id.*, at p. 517.) At that time, it was not clear that such a verdict (lacking the votes of the same nine jurors on each special verdict question) was valid. We concluded the granting of a new trial was erroneous, but did not resolve the underlying substantive issue,[20] because we found that even if the verdict was invalid on the stated ground, any challenge to the verdict had been forfeited. We explained: "*Failure to object to a verdict*

---

[20] After concluding in *Henrioulle* that we "need not reach the question of whether or not the same nine jurors must agree on each part of a special verdict" (*Henrioulle, supra,* 20 Cal.3d at p. 522), we subsequently resolved that issue in *Juarez, supra,* 31 Cal.3d 759, 767–768, concluding that the *same* nine jurors need not agree. (See also *Resch, supra,* 36 Cal.3d 676, 679.)

*before the discharge of a jury and to request clarification or further delibera-tion precludes a party from later questioning the validity of that verdict if the alleged defect was apparent at the time the verdict was rendered and could have been corrected."* (*Henrioulle,* at p. 521, fn. omitted, italics added.)[21] We concluded that because the alleged voting defect was apparent at the time the jury was polled and could have been cured by further deliberation, the defendant's failure to object forfeited the claim and precluded the trial court from granting a new trial on that basis. (20 Cal.3d at p. 522.)

More recently, in *People v. Wright* (1990) 52 Cal.3d 367 [276 Cal.Rptr. 731, 802 P.2d 221]—which, like *Lessard, supra,* 58 Cal.2d 447, was a capital case—we observed: "Defendant urges reversal is required because the record seemingly reflects that one of the twelve jurors . . . was not polled for an indication of his agreement with the verdict." (*Wright,* at p. 415.) In response, and without reaching the merits of the defendant's claim, we quoted the passage from *Lessard, supra,* 58 Cal.2d at page 452, set out above, emphasiz-ing that a claim of incomplete polling may be deemed forfeited, and that a " 'defendant . . . cannot sit idly by and then claim error on appeal when the inadvertence could have readily been corrected upon his merely directing the attention of the court thereto.' " (*Wright, supra,* 52 Cal.3d at p. 415.)

 The forfeiture rule generally applies in all civil and criminal proceed-ings. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 400, pp. 458–459; 6 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Reversible Error, § 37, pp. 497–500.) The rule is designed to advance efficiency and deter games-manship. As we explained in *People v. Simon* (2001) 25 Cal.4th 1082 [108 Cal.Rptr.2d 385, 25 P.3d 598] (*Simon*): " ' " 'The purpose of the general doctrine of waiver [or forfeiture] is to encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had . . . .' " [Citation.] " 'No procedural principle is more familiar to this Court than that a *constitutional* right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' . . ." [Citation.] [¶] "The rationale for this rule was aptly explained in *Sommer* v. *Martin* (1921) 55 Cal.App. 603 at page 610 [204 P. 33] . . . : ' "In the hurry of the trial many things may be, and are, overlooked which would readily have been rectified had attention been called to them. The law casts upon the party the duty of looking after his legal rights and of

---

[21] (Accord, *Juarez, supra,* 31 Cal.3d 759, 764 [noting the forfeiture rule, and commenting: "The obvious purpose for requiring an objection to a defective verdict before a jury is discharged is to provide it an opportunity to cure the defect by further deliberation."].)

calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal." ' " [Citation.]' (Fn. omitted; [citations].)" (*Simon, supra*, 25 Cal.4th at p. 1103, italics added.)[22]

■ Consistent with this general rule, various treatises and benchbooks have highlighted the particular forfeiture rule at issue in the present case and set out in *Henrioulle, supra*, 20 Cal.3d 512. One leading text states: "An objection to a defective verdict must be made before the jury is discharged. . . . [D]efects apparent when the verdict was read, and that could have been corrected, are waived [forfeited] by counsel's failure to timely object . . . unless the verdict itself is inconsistent." (Haning et al., Cal. Practice Guide: Personal Injury (The Rutter Group 2008) ¶ 9:685, p. 9-150 (rev. # 1, 2008), italics omitted; see also *id.*, ¶ 9:672.)[23]

As suggested above, the basis for the requirement of an objection to asserted imperfections in the polling of a jury concerning its verdict is no different from the basis for requiring objections to other equally important procedural matters at trial—ranging from the introduction of otherwise inadmissible evidence or dispositive procedural rulings,[24] to various constitu-

---

[22] (See also *In re Seaton* (2004) 34 Cal.4th 193, 198 [17 Cal.Rptr.3d 633, 95 P.3d 896] ["To consider on appeal a defendant's claims of error that were not objected to at trial 'would deprive the People of the opportunity to cure the defect at trial and would "permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal." ' "]; *People v. Scott* (1994) 9 Cal.4th 331, 353 [36 Cal.Rptr.2d 627, 885 P.2d 1040] [by enforcing a forfeiture rule, courts "hope to reduce the number of errors committed in the first instance and preserve the judicial resources otherwise used to correct them"]; see generally *People v. Partida* (2005) 37 Cal.4th 428, 434 [35 Cal.Rptr.3d 644, 122 P.3d 765].)

[23] Similarly, another well regarded source states: "[F]ailure to object to a verdict before the discharge of a jury and to request clarification or further deliberation precludes a party from later questioning the validity of that verdict if the alleged defect was apparent at the time the verdict was rendered and could have been corrected." (Cal. Civil Courtroom Handbook & Desktop Reference (Thomson 2008) § 39:5.) As observed in Witkin: "Even a seriously prejudicial kind of error in the conduct, deliberations, or verdict of the jury may be waived [forfeited] by failure to raise it in a timely manner. [¶] . . . [¶] . . . Where the error is a defect in the verdict, counsel should request its correction or clarification [citation]; failing this, counsel may lose the right to object. [Citations.]" (7 Witkin, Cal. Procedure, *supra*, Trial, § 376, pp. 438–439; see also 3 Cal. Civil Procedure During Trial (Cont.Ed.Bar 3d ed. 1995) § 22:31; Cal. Judges Benchbook: Civil Proceedings—Trial (CJER 1997) §§ 15.21, 15.28.)

[24] (E.g., *Simon, supra*, 25 Cal.4th 1082, 1097–1108 [forfeiture of claims under criminal venue statutes]; 6 Witkin & Epstein, Cal. Criminal Law, *supra*, § 37, pp. 497–500 [listing numerous illustrations of the forfeiture rule, including defective accusatory pleading, challenges to composition of the jury and the procedure it has followed, admission of inadmissible evidence]; accord, 9 Witkin, Cal. Procedure, *supra*, § 400, pp. 458–459 [noting application of

tional violations.[25] The requirement of an objection is premised upon the idea that a party should not sit on his or her hands, but instead must speak up and provide the court with an opportunity to address the alleged error at a time when it might be fixed. If defendants had so acted in the present case, the trial court could have inquired of Juror Brown concerning his vote on apportionment—and if that response did not supply a ninth vote on that matter, the court could have sent the jury back for further deliberations. By so proceeding, and consuming at most a few minutes of time, the problem could have been resolved back in May 2006, instead of now—approximately three years later.

In reaching a contrary conclusion, the Court of Appeal suggested, first, that no forfeiture occurred, because the polling defect was not "apparent" to the trial court, to the jurors, or to counsel. (See *Henrioulle, supra,* 20 Cal.3d 512, 521 [a claim may be forfeited "if the alleged defect was apparent at the time the verdict was rendered and could have been corrected"].) In this respect the appellate court characterized the polling as "confusing" and concluded that "[t]here was no realistic opportunity for defense counsel to object . . . even if an error had been noticed," because the trial court "took the matter out of counsel's hands." In addition, the appellate court suggested the trial court erred by failing to ask counsel whether there was "anything further" *before*, rather than after, the court discharged the jury.

The record reflects, however, that the polling was methodical. The trial court's polling of Juror Brown concerning most of the special verdict questions—but not the apportionment question—was not confusing, nor did defense counsel's failure to notice this omission establish that the polling was confusing. This situation was not one in which it was impractical to expect defense counsel to be able to follow the course of the polling and make a contemporaneous objection to any omission. Indeed, as observed earlier, immediately prior to polling the jury the trial court noted its hope that each juror would have available his or her "cheat sheet"—the personal "colored copy" of the special verdict form (see *ante,* fn. 1). The record also reflects

---

forfeiture rule in a broad range of civil matters]; see also Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2008) ¶ 8:3282, p. 8G-2 (rev. # 1, 2007) ["Even inadmissible evidence *is* evidence . . . ," and "unless the objection is preserved, *any* [relevant] evidence of record is sufficient to support a judgment on appeal . . ."].)

[25] (E.g., *People v. Alvarez* (1996) 14 Cal.4th 155, 192, fn. 7 [58 Cal.Rptr.2d 385, 926 P.2d 365] [forfeiture of constitutional claims related to physical restraints at trial]; *People v. Crittenden* (1994) 9 Cal.4th 83, 126 [36 Cal.Rptr.2d 474, 885 P.2d 887] [forfeiture of right to assert a *Miranda* violation]; *People v. Mickey* (1991) 54 Cal.3d 612, 664–665 [286 Cal.Rptr. 801, 818 P.2d 84] [the forfeiture rule applies to claims of error under the state and federal Constitutions]; *People v. Gallego* (1990) 52 Cal.3d 115, 166 [276 Cal.Rptr. 679, 802 P.2d 169] [applying the objection/forfeiture rule to claim of error under art. I, § 16 of the state Constitution]; *People v. Wilson* (1963) 60 Cal.2d 139, 146–148 [32 Cal.Rptr. 44, 383 P.2d 452] [forfeiture of constitutional and statutory rights to speedy trial].)

that counsel for both parties had copies of the special verdict form immediately prior to the commencement of the jury's deliberations. Under these circumstances, it is reasonable to assume that thereafter—immediately after the jury's delivery of its verdict and immediately prior to the trial court's polling of the jury—all trial counsel had in their possession copies of the special verdict form, with which they could follow the trial court's polling and take notes concerning the response of each juror. Evidently, defense counsel failed to do so accurately, but this was no fault of the trial court.

Nor, contrary to the appellate court's characterization, did the trial court take the matter out of defense counsel's hands. After accepting the verdict and then thanking the jury at length, the court simply proceeded to address postverdict matters. The court was not obligated to ask counsel whether there was "anything further" *prior* to discharging the jury. By asking that question afterward, the court did not deprive defense counsel of earlier opportunities to object when the court had completed its polling of Juror Brown, or immediately after the court had thanked the jurors for their service but before the jury was discharged.

We conclude that the incomplete polling of Juror Brown was indeed "*apparent* at the time the verdict was rendered and could have been corrected." (*Henrioulle, supra*, 20 Cal.3d 512, 521, italics added.) The polling defect is apparent to any reader of the reporter's transcript. The circumstance that it evidently escaped notice by defense counsel and others does not indicate that the incomplete polling was "not apparent" as we employed that term in *Henrioulle*. As plaintiffs observe: "If a 'defect' like the one here were deemed *not* 'apparent,' counsel for losing parties—in both civil and criminal cases—would have an incentive to keep mum about a possible yet curable defect and voice objections only after the jury is discharged, when a cure is too late, thus mandating reversal and retrial. Although most counsel would resist that temptation, neither parties nor counsel should be given that incentive in the first instance. Rather, the incentive should be in favor of mandating an objection to increase the chances that such defects are detected and cured before the jury is discharged."

Nor do we find persuasive the Court of Appeal's attempt to distinguish prior cases involving forfeiture. The appellate court below observed that "[i]n both *Henrioulle* . . . and *Silverhart* . . . , there were at least nine votes to support a verdict at the time the waiver occurred," and it speculated that, in *Henrioulle*, we found the asserted defect (the absence of evidence that the *same* nine jurors had voted for each special verdict element) could be forfeited because that alleged defect was "*less severe* than an eight-vote special verdict, the defect in this case." (Italics added.) The appellate court below added: "It is also possible to view the written verdict as inconsistent

with the oral verdict as disclosed by the polling. Inconsistent verdicts can be reviewed on appeal even if not objected to below."

As noted earlier, it cannot be established that the verdict in the present case was supported by eight votes only, rather than by nine or more votes. Nor do we find support for the suggestion that forfeiture of the right to challenge the polling of a jury depends upon the severity of the alleged defect in the verdict.[26] Nor, contrary to the Court of Appeal's assertion, is it possible to view the defect here as an "inconsistent verdict."[27]

For these reasons, we reject the Court of Appeal's determination that defendants did not forfeit their claim of incomplete polling.[28]

2

As noted, defendants suggest that the appellate court's no-forfeiture determination was correct, although for reasons upon which the Court of Appeal did not rely. We find defendants' alternative analysis to be unpersuasive.

First, defendants reiterate their assertion that the verdict was supported by only eight votes and hence was "not a constitutional verdict as a matter of law"—a defect that, defendants claim, cannot be forfeited. As observed earlier, however, defendants' argument rests upon a faulty premise: They rely upon the various juror declarations, but as also observed earlier, the Court of

---

[26] Many of the prior decisions that have enforced the general forfeiture rule (see *ante*, fns. 24 & 25) have involved significant and important statutory and constitutional rights in a broad range of civil and criminal proceedings, including capital cases.

[27] An "inconsistent" verdict is one that is *internally* inconsistent—not merely a verdict as to which the polling was incomplete, or a verdict that has been changed by the response of one or more jurors at the time of polling. (*Henrioulle, supra*, 20 Cal.3d 512, 521, fn. 11 ["although some jurors may have voted inconsistently, *the verdict itself* is not inconsistent" (italics added)]; cf. *Mizel v. City of Santa Monica* (2001) 93 Cal.App.4th 1059, 1071 [113 Cal.Rptr.2d 649] [special verdict was inconsistent when some responses indicated that a dangerous curb caused the plaintiff's injuries, but other responses indicated the same curb had "*not* created a reasonably foreseeable risk of the kind of injury suffered by" the plaintiff]; *Morris v. McCauley's Quality Transmission Service* (1976) 60 Cal.App.3d 964, 970 [132 Cal.Rptr. 37] [verdict necessarily implying that the defendant was negligent, and another verdict in the same case necessarily implying that the defendant was not negligent, were internally inconsistent].)

[28] Our conclusion is consistent with the decision in *Suggs, supra*, 64 S.W.3d 658. As described *ante*, in footnote 15 in that case, the trial judge polled only nine of the required 10 jurors who had signed a verdict and the plaintiff attempted to assert on appeal an irregularity in the polling. The plaintiff, claiming "fundamental" constitutional error (*Suggs*, at p. 660), sought to invalidate the verdict on the ground that it was not supported by the requisite number of jurors. The appellate court in *Suggs* concluded that the plaintiff "waived" the claim by failing "to object to the fact that only nine jurors were polled" (*ibid.*) at the time of the polling, when the error could have been corrected (*id.*, at p. 661).

Appeal's conclusion that all of the declarations are inadmissible is not before us and we treat that question as settled for purposes of this case. Accordingly, as we have explained, defendants' claim that there were eight votes only—and not nine or more votes in support of the verdict—has not been, and cannot be, established by admissible evidence.

Defendants also assert that their claim of incomplete polling was not forfeited because, they observe, there is no indication that their failure to object was "the result of a desire to reap a 'technical advantage' or engage in a 'litigious strategy.' " (*Woodcock v. Fontana Scaffolding & Equip. Co.* (1968) 69 Cal.2d 452, 456, fn. 2 [72 Cal.Rptr. 217, 445 P.2d 881] (*Woodcock*).)

In *Woodcock*, a jury returned a verdict for the plaintiff, a worker who had been physically injured in the course of employment, in the sum of $13,000. Thereafter, on appeal, the parties contested an alleged ambiguity in the verdict. The defendant asserted that the $13,000 represented the entire amount of the plaintiff's damages, and hence that sum was required to be reduced by the amount of workers' compensation benefits received by the plaintiff. The plaintiff argued that the $13,000 sum already reflected an offset by the jury for the workers' compensation payments. We upheld the defendants' position, finding that, in light of the jury instructions, the verdict was *not* ambiguous, that it included workers' compensation payments, and hence that the amount of the damages awarded was required to be reduced accordingly. (*Woodcock, supra*, 69 Cal.2d 452, 457–459.) Despite arriving at that conclusion, however, we also observed, in dictum, that when a verdict is truly ambiguous, the adversely affected party should request that the trial court act under Code of Civil Procedure section 619[29] to secure from the jury a " 'more formal and certain verdict.' " (*Woodcock, supra*, 69 Cal.2d at p. 456.) In this respect, we further observed in a footnote that is presently relied upon by defendants: "Frequently, failure to object to the form of a verdict before the jury is discharged has been held to be a waiver of any defect. [Citations.] However, waiver is not automatic, and there are many exceptions. [Citations.] [¶] *Waiver is not found where the record indicates that the failure to object was not the result of a desire to reap a 'technical advantage' or engage in a 'litigious strategy.'* [Citations.] . . . In . . . many . . . cases, waiver is not an issue where a defect is latent and there is no hint of 'litigious strategy.' [¶] There was no waiver here because, in light of the instructions, the verdict was not ambiguous. [Citation.] Accordingly, there was nothing to clarify. But even if the verdict were ambiguous, there is no hint of a purpose to achieve a 'technical advantage' or fulfill a 'litigious

---

[29] That statute provides: "When the verdict is announced, if it is informal or insufficient, in not covering the issue submitted, it may be corrected by the jury under the advice of the Court, or the jury may be again sent out." (Code Civ. Proc., § 619.)

strategy,' and defendant should not be estopped to make his objections."
(*Id.*, at p. 456, fn. 2, italics added.)

 Defendants assume that *Woodcock*'s articulated exception to the waiver (forfeiture) rule for *ambiguous* verdicts, as to which a party failed to object and seek a more formal verdict under Code of Civil Procedure section 619, applies as well to the *incomplete polling* of a juror under section 618. Defendants do not cite any decision that has so extended the exception described in *Woodcock*'s dictum, however,[30] and we decline to so extend it here.[31] We agree with plaintiffs that such an exception to the objection and forfeiture rule would be unwarranted in the context of incomplete polling under section 618. As plaintiffs observe, a court generally can avoid or cure an *ambiguity* in a verdict by interpreting it—as we did in *Woodcock*, reading the verdict's " 'language . . . in connection with the pleadings, evidence and instructions' " (*Woodcock, supra*, 69 Cal.2d 452, 456)—and thereby obviating a need for reversal and retrial. But without a timely objection to *incomplete polling*, a court cannot avoid or cure the defect: after the jury's discharge, the court can neither complete the polling nor return the jury to its deliberations.

We conclude that defendants, by failing to timely object to the incomplete polling of Juror Brown, forfeited their claim of error.[32]

---

[30] The cases that have applied the *Woodcock* dictum to find an absence of forfeiture have involved, similarly to *Woodcock, ambiguous* verdicts or informal, inconsistent, or mistaken verdicts that could be corrected under Code of Civil Procedure section 619; they have not concerned claims of incomplete polling under section 618. (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 327–328 [71 Cal.Rptr.3d 469]; *Schiernbeck v. Haight* (1992) 7 Cal.App.4th 869, 877–879 [9 Cal.Rptr.2d 716]; *Byrum v. Brand* (1990) 219 Cal.App.3d 926, 936–937 [268 Cal.Rptr. 609].)

[31] Even if the *Woodcock* exception were applicable outside the context of ambiguous verdicts and in the situation posed by incomplete polling, it is not clear that the exception would apply in the present case. Although we observed in *Woodcock* that "in many . . . cases, waiver is not an issue where a defect is *latent* . . ." (*Woodcock, supra*, 69 Cal.2d 452, 456, fn. 2, italics added), as noted above the polling defect in the present case must be characterized as apparent, and not latent.

[32] In any event, defendants have not established prejudice from any error that may have arisen from the incomplete polling. (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715 [34 Cal.Rptr.2d 898, 882 P.2d 894] ["trial error is usually deemed harmless in California unless there is a 'reasonabl[e] probab[ility]' that it affected the verdict"]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] [adopting the "reasonable probability" standard for asserting prejudicial error on appeal].) As plaintiffs observe, defendants cannot carry their burden: "If the trial court had polled Juror Brown on fault, one of two things would have happened: (1) he would have indicated his agreement with the 80-20 apportionment, in which case there would have been a proper verdict and the court would have discharged the jury, or (2) he would have indicated his disagreement with the 80-20 apportionment, in which case the trial court would have sent the jury back to deliberate on fault. Recall, however, that nine jurors were polled as having voted for at least an 80-20 apportionment—eight for 80-20 [citation] and one for 90-10 [citation]. This makes it highly *improbable* that redeliberations

## IV

The judgment rendered by the Court of Appeal is reversed. The matter is remanded to that court for proceedings not inconsistent with this opinion.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

---

would have caused a majority of the jurors to assess less than 20 percent fault to defendants." (Accord, *Suggs, supra*, 64 S.W.3d 658, 661–662 [finding that a claim of incomplete polling was forfeited, but that in any event, any assumed error was harmless on the facts of the case].)