Filed 8/2/22  Ting v. Zulueta CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

<table>
<tr><td>FONG SING TING et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>ANTHONY ZULUETA,<br><br>     Defendant and Respondent.</td><td>A164175<br><br>(City & County of San Francisco Super. Ct. Nos. CCH21583987, CCH21584006)</td></tr>
</table>

In this highly contentious dispute between neighbors, the trial court issued mutual civil harassment restraining orders pursuant to Code of Civil Procedure section 527.6.[1] On appeal, Fong Sing Ting and Koon Hung Ting[2] contend there was insufficient evidence to support the one-year civil harassment restraining orders issued against them in favor of their next-door neighbor Anthony Zulueta. We disagree and affirm the order.

---

[1] All further statutory references are to the Code of Civil Procedure.

[2] For purposes of clarity, we shall refer to Fong Sing Ting and Koon Hung Ting individually by their first names (Fong and Koon) and collectively as appellants or as the Tings.

1

## BACKGROUND

### 1. *Fong's Request for a Restraining Order*

On August 26, 2021, Fong, then 76 years old, filed a request for an elder abuse restraining order to protect himself, his 76-year-old wife, and his 42-year-old son, Koon, from harassment by Zulueta. Fong stated that Zulueta had started yardwork which encroached on Fong's property, liquidated soil on his property, and destroyed a tree. According to Fong, Zulueta did not heed the request to refrain from working on Fong's property. Zulueta reportedly responded with derogatory name calling and verbal insults aimed at Fong's son, Koon. On August 25, 2021, Zulueta used a shovel to throw soil at Fong and Koon.

On August 27, 2021, the trial court issued a temporary restraining order against Zulueta and set a hearing for October 15, 2021.

### 2. *Zulueta's Request for a Restraining Order*

On September 7, 2021, Zulueta filed a request for a civil harassment restraining order against Koon and Fong to protect himself, his wife, and their 10-year-old son and 17-year-old daughter. On August 25, 2021, Zulueta was working on a retaining wall project in his backyard, when Fong and Koon approached him and stood directly next to the hole Zulueta was back filling. Zulueta said that the "wind took part of the sand" and "blew [it] towards" Fong and Koon. Fong and Koon then picked up handfuls of sand and threw it at Zulueta, which got in his hair, eyes, and ears. Zulueta had video evidence of the incident.

Zuletta included an attachment listing previous harassment: On January 9, 2021 Fong and Koon yelled at Zulueta, his wife, and his workers about the property line and a tree coming down due to sand falling to their side of the property line. The tree was "placed back" and remained alive. The

2

yelling caused Zulueta's wife to "feel harassed." Fong asked Zulueta for his property insurance so that he could file a claim against him. Zulueta provided the information and advised his insurer that Fong intended to file a claim for the tree.

On January 31, 2021, Fong and Koon yelled at Zulueta's workers and attempted to remove a post from their property. Zulueta told Fong and Koon that the post would be removed once his repair work was completed.

On February 6, 2021, Fong told Zulueta he could put some dirt in a hole in the middle of Fong's backyard. However, the next day, Fong yelled at Zulueta, his wife and a worker, and told them they could not go onto his property in order to make certain repairs. Fong and his wife called the police. The responding officers said that Zulueta was not doing anything wrong, but in the future he should obtain written authorization to be in a neighbor's yard. After the police left, Fong pushed his tree at Zulueta.

On May 16, 2021, Fong and Koon yelled at Zulueta and his workers and threatened to cut down the wooden forms that had been placed for pouring concrete. Zulueta called the police. The responding officers told Fong and Koon they would be cited for vandalism if they touched or cut the wooden forms.

On an unspecified occasion, Koon told Zulueta's 10-year old son to return inside his house for his own good. Zulueta's son also reported that on another occasion, while he was riding his bike and playing in the front of the house, Koon told him to stay on his own property.

Zulueta also attached a letter from his wife, in which she described constant harassment by Fong and Koon against herself and her family whenever they are in their own backyard. Mrs. Zulueta reported that her family "feels threatened, upset and anxious" by Fong and Koon when they are

3

outside in their respective backyards. She explained that in light of the COVID-19 pandemic, she and her husband had been trying to make their backyard a safe place for their children to play and get some fresh air. Mrs. Zulueta stated, "As we are trying to fix our backyard, our neighbors are constantly prolonging the process by viciously attacking us verbally and whomever is in our backyard at the time which causes our project to halt." On multiple occasions, the Zuluetas have tried to talk to Fong and Koon "in a calm manner" but Fong and Koon "become hostile" with the Zuluetas, which then "turns into a more assaultive conversation."

Mrs. Zulueta wrote that it is not healthy for their "young children to feel anxious and threatened when they see our neighbors, especially when in our own backyard." She concluded the letter by stating, "This harassment and hostility is causing anxiety which is putting a toll and negative imprint on our children, which needs to be stopped as it's traumatizing and affecting their childhood."

The trial court denied Zulueta's request pending the hearing scheduled for October 15, 2021.

### 3.    *Hearing on the Restraining Order Applications*

The court held a hearing on the requests on October 15, 2021. At the start of the proceedings, the court stated that it had reviewed the evidence submitted by both parties. The court expressed concern that based on the evidence submitted, Fong and Koon had engaged in conduct that was for "no other purpose than to harass" Zulueta. Specifically, the court noted Zulueta had not approached the Tings and that there was "evidence that there's been a constant interference with [Zulueta's] attempt to do his job, as to workers, and him, and his family." The court indicated it was "tempted to issue a restraining order against [Fong] and [Koon], and not against . . . Zulueta."

4

Zulueta told the court that "every time" he and his family "work on our backyard" Fong and Koon "tend to be aggressive" and "harass" him, his wife, their children, and the workers the Zuluetas have hired to help with their yard. Zulueta said that Fong and Koon would say things like, "Hey, this our property. Don't . . . come out here. This is not yours. Why the heck are you here?" At one point, one of the Tings told Zulueta's 10-year old son that he should go back inside the house.

Zulueta advised the court that he had a video showing Koon being aggressive towards the Zuluetas as they worked on their backyard project. Zulueta also had another video showing how Koon "was trying to cut the forms," which were described as wooden structures designed to hold concrete. After reviewing the videos, the court stated it had observed Fong and Koon yelling at the gate between the two properties, as well as heard Zulueta calling Koon " fat boy, fat boy, what you going to do fat boy?" The court also saw someone shoveling sand in the direction of Fong and Koon. Zulueta said he was the person shoveling sand and his friend was the one calling Koon "fat boy." The court remarked that it appeared that Zulueta had purposely thrown sand at Fong and Koon.

## 4.    *Trial Court Ruling*

After hearing from the parties and reviewing the evidence presented, the court issued mutual no harassment restraining orders, which are set to expire on October 15, 2022. With respect to Zulueta and his family, Fong and Koon were ordered not to do any of the following: "Harass, intimidate, molest, attack, strike, stalk, threaten, assault sexually or otherwise, hit, abuse, destroy personal property of, or disturb the peace of the person." Additionally, Fong and Koon were ordered to not "contact any of [the Zuluetas] either directly or indirectly, in any way, including but not limited to in person, by

5

telephone, in writing, by public or private mail . . . by e-mail, by text message, by fax, or by other electronic means." The court further ordered that Fong and Koon would be able to contact Zulueta and his family in "writing only and only about the construction that is taking place" at Zulueta's property.

## DISCUSSION

### 1. *Applicable Law and Standard of Review*

Section 527.6, subdivision (a)(1) states: "A person who has suffered harassment . . . may seek . . . an order after hearing prohibiting harassment . . . ." Harassment includes "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).) Further, "course of conduct" is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." (§ 527.6, subd. (b)(1).) If the court "finds by clear and convincing evidence that unlawful harassment exists," the court must issue a restraining order prohibiting the harassment. (§ 527.6, subd. (i).)

"In assessing whether substantial evidence supports the requisite elements of willful harassment, as defined in . . . section 527.6, we review the evidence before the trial court in accordance with the customary rules of appellate review. We resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762 (*Schild*).)

6

## 2.    *Sufficiency of the Evidence*

Appellants Fong and Koon argue the evidence was insufficient to support the issuance of the restraining orders. Appellants' essential contention on appeal seems to be that their conduct did not rise to harassment within the meaning of section 527.6.

### A.    *Course of Conduct*

Appellants assert the only emotional distress reported by Zulueta was that his wife felt "harassed" on January 9, 2021, when appellants yelled at him, his wife, and their workers in response to a tree falling over. Appellants contend this single incident does not constitute a course of conduct. Were this the only incident, appellants might have a stronger argument, but the record belies this claim. The record establishes "a pattern of conduct"—repeated incidents of screaming and yelling—with "a continuity of purpose"—to interfere with Zulueta's use and enjoyment of his backyard, which occurred "over a period of time." (§ 527.6, subd. (b)(1).)

### B.    *Emotional Distress*

Appellants claim there is insufficient evidence that Zulueta suffered substantial emotional distress as a result of their actions or that a reasonable person would have suffered substantial emotional distress under the circumstances. In particular, they argue the evidence of emotional distress was inadmissible, conclusory, and trivial.

In order for a course of conduct to justify the issuance of an injunction under section 527.6, that conduct "must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).) "Section 527.6 does not define the phrase 'substantial emotional distress.' However, in the analogous context of the tort of intentional infliction of

emotional distress, the similar phrase 'severe emotional distress' means highly unpleasant mental suffering or anguish 'from socially unacceptable conduct' [citation], which entails such intense, enduring and nontrivial emotional distress that 'no reasonable [person] in a civilized society should be expected to endure it.' " (*Schild, supra,* 232 Cal.App.3d at pp. 762–763.)

As an initial matter, we note that it is not necessary that there be direct testimony presented by a person seeking a restraining order that he or she suffered emotional distress as a result of the harassment to justify the issuance of the order. If the evidence otherwise raises an inference of such distress, it is sufficient to support an injunction. (*Ensworth v. Mullvain* (1990) 224 Cal.App.3d 1105, 1110–1111 (*Ensworth*), disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4.) Here, in his petition, Zulueta included a letter from his wife stating, "My family feels threatened, upset and anxious when our neighbors (Koon Hung Ting and Fong Sing Ting) go outside into their backyard while we are in ours." Appellants contend the letter was not properly before the court because it did not qualify as oral testimony, an affidavit, or deposition. Appellants, however, did not object to the admission of any of the evidence before or during the court proceeding. For this reason, they have forfeited their claim. (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 726.) We will not consider procedural defects or allegedly erroneous rulings when an objection could have been but was not raised in the trial court by some appropriate method. (*Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 776.) The purpose of this doctrine is to encourage a party to bring errors to the attention of the trial court, so that they may be corrected or avoided. (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264.) "It is unfair to the trial judge and to the adverse party to take advantage of an alleged error on appeal

where it could easily have been corrected at trial." (*Children's Hospital*, at p. 776.) In any event, hearsay evidence is admissible at a section 527.6 hearing. (*Duronslet,* at pp. 728–729.)

We disagree with appellants' contention that Mrs. Zulueta's letter provides only conclusory assertions. Mrs. Zulueta stated that she and her family feel "threatened, upset, and anxious" whenever they are outside in their own backyard and appellants are outside in their backyard. She expressed that the continued hostility and harassment was traumatizing her children as they no longer feel safe in their own backyard. Mrs. Zulueta further reported that her children "feel anxious and threatened" whenever they see appellants. We conclude there is sufficient evidence that Zulueta and his family suffered substantial emotional distress. (See *Ensworth, supra,* 224 Cal.App.3d at p. 1112 [evidence sufficient where plaintiff "stated in her declaration that [defendant's] activities indeed had caused her 'significant emotional distress' "].)

Appellants' reliance on *Schild, supra,* 232 Cal.App.3d 755 is misplaced. *Schild* involved a complaint by homeowners that the noise created by their neighbors' children playing basketball for up to 30 minutes in the neighbors' backyard interrupted the homeowners' "Saturday and Sunday afternoon naps and, in general, interfered with their ability to rest and relax in their own home." (*Id.* at p. 758.) The appellate court dissolved the injunction finding, "The noise from a ball and the verbal chatter by several people engaged in recreational basketball play in the residential backyard described herein, playing at reasonable times of the day for less than 30 minutes at a time and no more than five times per week, does not constitute unlawful harassment under section 527.6." (*Schild*, at p. 761.) Furthermore, the court concluded there was no evidence the basketball playing had caused the complainants to

9

suffer actual and substantial emotional distress. (*Id.* at p. 763.) There was no "medical, psychological or other evidence in the record that the sounds of basketball playing, however offensive and annoying, caused the [complainants] substantial emotional distress," and the court concluded such conduct would not cause a reasonable person to suffer substantial emotional distress. (*Ibid.*) "A reasonable person must expect to suffer and submit to some inconveniences and annoyances from the reasonable use of property by neighbors, particularly in the sometimes close living of a suburban residential neighborhood." (*Ibid.*)

Appellants' acts of continual verbal assaults is not comparable to the innocuous conduct—children playing basketball—at issue in *Schild*. The anxiety and fear experienced by Zulueta and his family qualified as "highly unpleasant mental suffering or anguish," that was caused by appellants' " 'socially unacceptable conduct.' " (*Schild*, *supra*, 232 Cal.App.3d at pp. 762–763.) In addition, " 'no reasonable [person] in a civilized society should be expected to endure' " (*id.* at p. 763) continual verbal aggression whenever they are outside in their own backyard, as Zulueta and his family have.

*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 496 (*Cochran*), cited by appellants, does not alter this conclusion. Quoting out of context language from *Cochran*, appellants argue a reasonable person would not suffer substantial emotional distress from " 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to

express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.' " (*Ibid.*, italics omitted.) However, *Cochran* did not involve a civil harassment restraining order under section 526.6, but involved an appeal of a judgment of dismissal after a demurrer was sustained without leave to amend. (*Id.* at p. 493.) More importantly, the underlying cause of action was for intentional infliction of emotional distress, which requires "extreme and outrageous conduct." (*Id.* at p. 494.) It was within this context that the court correctly observed that " 'mere insults' " and " 'rough language' " did not constitute actionable emotional distress.[3] (*Id.* at p. 496.)

In sum, the trial court had an ample basis to conclude that a reasonable person would have similarly suffered substantial emotional distress.

### C.    *Legitimate Purpose*

Appellants argue that their interactions with Zulueta served the legitimate purpose of protecting their property, and thus, cannot constitute harassment under section 527.6  Appellants contend that the complained-of conduct was in response to what they reasonably perceived to be Zulueta's encroachment on and interference with the reasonable enjoyment of their property. Appellants rely on *Byers v. Cathcart* (1997) 57 Cal.App.4th 805 (*Byers*) to support this argument. We are not persuaded.

In *Byers*, the trial court granted one party a section 527.6 injunction that expressly prohibited the other party from parking in a driveway, despite that party's claim she had an easement. The appellate court reversed,

---

[3] Similarly inapt is *Hughes v. Pair* (2009) 46 Cal 4th1035, which involved a claim for intentional emotional distress in the context of a sexual harassment claim.

explaining that in order to constitute harassment under section 527.6, subdivision (b), "the complained-of conduct must have 'no legitimate purpose.' " (*Byers, supra,* 57 Cal.App.4th at pp. 807–808.) The *Byers* court concluded that the trial court in that case had erred in issuing an injunction pursuant to 527.6 because one could not say that the conduct at issue— parking along the side of a driveway—served no legitimate purpose. (*Id.* at p. 808.) The court reasoned: "It can hardly be disputed, however, that parking a car is a legitimate necessity. Parking generally is not conduct having 'no legitimate purpose.' There is no evidence here that the parking was done for the purpose of annoying defendants as opposed to the purpose of storing a vehicle between periods of use. The no-parking provision of the injunction was therefore beyond the scope of section 527.6." (*Ibid.*)

The only conduct at issue in *Byers* was the plaintiff's parking a car. In contrast here, Zulueta presented evidence that appellants repeatedly verbally harassed Zulueta and his family, attempted to cut down wooden posts on Zulueta's property, and threw sand at Zulueta. The conduct at issue in this case is thus plainly distinguishable from that at issue in *Byers.* In any event, even assuming the actions were motivated by an attempt to defend their property rights, neither *Byers,* nor any other case of which we are aware, stands for the proposition that a party may threaten or otherwise harass people if the party is motivated by a  legitimate purpose.

## DISPOSITION

The challenged orders are affirmed.  In the interests of justice, each party to bear their own costs and attorney fees on appeal.

12

_____
Nadler, J.[*]

WE CONCUR:


_____
Pollak, P.J.


_____
Brown, J.

*Ting v. Zulueta  A164175*

---

[*] Judge of the Superior Court of California, County of Sonoma, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.