Filed 1/9/24  Kirk v. Quirino CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GORDANA KIRK,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JESUS QUIRINO, JR.,<br><br>    Defendant and Respondent. | B319379<br><br>(Los Angeles County<br>Super. Ct. No. BC630772) |

    APPEAL from a judgment of the Superior Court of Los Angeles County, James A. Kaddo, Judge.  Affirmed.

    Law Offices of Gabor Szabo and Gabor Szabo for Plaintiff and Appellant.

    Ford, Walker, Haggerty & Behar, Win D. Doan and Mark P. LaScola for Defendant and Respondent.

_____

Gordana Kirk sued Jesus Quirino, Jr. for damages arising out of a collision between their two vehicles.  After the jury found Quirino not negligent and the trial court entered judgment in Quirino's favor, Kirk filed a motion for a new trial, which the court denied.

On appeal Kirk contends the judgment should be reversed and the case remanded for a new trial because the trial court found the jury's verdict was inconsistent with the evidence; polling of the jurors revealed more than one-fourth of the jurors disagreed with the verdict; the court committed judicial misconduct that prevented Kirk from having a fair, impartial trial; and the verdict was not supported by the evidence and was contrary to law.  These contentions lack merit, and we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Kirk's Complaint and the Jury Trial*

In 2016 Kirk filed a complaint against Quirino for damages arising from a 2014 motor vehicle accident at the intersection of Centinela Avenue and Inglewood Avenue in Los Angeles County. She alleged Quirino negligently operated his vehicle, causing it to collide with hers.

The jury trial commenced in December 2021.  Kirk testified that, before the accident, she was traveling eastbound on Centinela and intending to make a left turn onto Inglewood. At the intersection with Inglewood, Centinela had no stop sign or traffic light.  Kirk stopped in the eastbound left-turn lane before making the turn.  There were three westbound lanes on Centinela.  In the two westbound lanes closest to the center of the road, vehicles had stopped before the intersection, but the third, curbside lane did not have a stopped vehicle.  A big truck in the westbound middle lane partially blocked Kirk's view of the

2

curbside lane. The truck and the other vehicle opposite to her "waved [her] that it's okay for [her] to make a left turn." Kirk slowly made a left turn. She focused to see if anyone was coming as she was making her turn, but she could not see, or completely see, her right side. Quirino's car struck the rear right passenger side of Kirk's car.

Quirino testified he was traveling westbound on Centinela before arriving at the Inglewood intersection. He was in the middle lane and was going 20 miles per hour when he merged to the far right (third) lane. He traveled in the third lane for a distance of several car lengths before the accident. As Quirino approached Inglewood, he saw the truck, which had an elevated body, in the middle lane. Looking under the truck, Quirino for the first time was able "vaguely" to see Kirk's car, which was stopped but proceeded to move. At that time, Quirino was a distance of only one or two car lengths from the intersection. He believed there was nothing he could do to avoid the accident. At the time of the collision he had his foot on the brake and had slowed down to 10 miles per hour or less. The right front of Quirino's vehicle hit the right rear of Kirk's car, and the position of the vehicles was approximately 90 degrees to each other at the moment of impact. After Quirino and Kirk exchanged insurance information, Kirk told Quirino she (Kirk) was at fault for the accident.

Bryan Randles, an expert retained by Quirino, testified the changes in velocity of Quirino's and Kirk's vehicles during the collision were within the range of a bumper car impact at an amusement park and testing revealed that injuries from such impacts were relatively minor. Additional witnesses testified about Kirk's alleged injuries and whether they were caused by

the accident, including medical practitioners who treated or otherwise examined Kirk.

2. *The Verdict, the Polling of the Jurors, and the Judgment*

On December 13, 2021, the jury returned its verdict, which the court read aloud. The first question on the special verdict form asked whether Quirino was negligent. To that question, the jury answered "No." As instructed, the jury, having answered the first question in the negative, left blank the remaining questions on the verdict form, including the questions asking whether Quirino's negligence was a substantial factor in causing harm to Kirk and the amount of Kirk's damages.

The jurors were polled that same day. The clerk stated, "Ladies and gentlemen of the jury, as your seat number is called, please answer 'Yes,' if the answer, as read, is your true and individual vote. 'Question No. 1, was Jesus Quirino, Jr. negligent? Answer: No.' Was this your individual vote, Juror No. 1?" Juror No. 1 responded, "Yes."

The clerk called each of the remaining jurors. Jurors Nos. 2, 3, 6 and 7 stated, "Yes." Jurors Nos. 4 and 5 stated, "No." Jurors Nos. 8 and 9 each initially said, "No," but Juror No. 9 then stated, "Yes, yes, yes. I cannot remember." The clerk asked, "[Y]ou voted for what the judge read, correct?" Juror No. 9 replied, "No negligence."

After further discussion between the clerk and the court, the court said, "Did you vote 'No'? . . . Did you vote 'Yes'? Now, I'm confused. All right. The answer of the jury—" Juror No. 8 immediately stated, "Ask—yes." When Juror No. 9 requested the court repeat the question, the court said the answer to the question whether the jury found the defendant negligent had been "No," and the court asked, "Is that how you voted?"

4

The court, however, directed its question to the presiding juror, whom it addressed by name. The presiding juror replied, "She agreed with what the answer is." The clerk asked, "She was one of the jurors that voted for this verdict?" The presiding juror responded, "Correct." Neither counsel objected or asked for further clarification with respect to the votes of Jurors Nos. 8 and 9.

The clerk continued with the polling by asking Juror No. 10, "[D]id you vote for this verdict?" Juror No. 10 nodded his or her head. Juror No. 11 stated, "No." Juror No. 12 stated, "Yes." At the conclusion of polling, the clerk announced the vote was 9 to 3. The court asked, "9 to 3?" The clerk replied, "Yes." The court stated, "Okay." After further discussion, the court excused the jury. Again, neither counsel objected.

On January 6, 2022, the court entered judgment in favor of Quirino.

### 3. *Kirk's Motion for a New Trial*

On February 3, 2022, Kirk filed a motion for a new trial raising numerous issues. As relevant here, Kirk argued the verdict was invalid because Jurors Nos. 4, 5, 9 and 11 believed both parties were negligent but Juror No. 9, whom Kirk referred to as "the decisive vote," had been confused during voting and polling. Kirk concurrently filed the declaration of her trial counsel, in which her attorney averred that, according to another juror, Juror No. 9 "in open [c]ourt did not know how she voted on the question whether or not Defendant was negligent." Although acknowledging Juror No. 9 had voted that Quirino was not

5

negligent, Kirk's attorney stated Juror No. 9 had been confused during the second day of deliberations.

Kirk's motion also claimed judicial misconduct. On the judicial misconduct issue, Kirk's attorney averred that after the verdict and juror polling, he interviewed the jurors, who indicated they noticed the court treated Quirino's attorney and him differently. They purportedly explained to him that the court would overrule his objection to a question by Quirino's attorney, but would sustain Quirino's attorney's objection if he asked the same question. Kirk did not file the declaration of any juror to support the motion for a new trial.

Quirino opposed Kirk's motion. His opposition papers included the declarations of the presiding juror and Juror No. 9. The presiding juror averred the jurors had voted 9 to 3 that Quirino was not negligent. She also stated she did not find any of the jurors had been confused or mistaken in voting on Question No. 1 that Quirino was not negligent. In her declaration Juror No. 9 averred, for Question No. 1, she voted Quirino was not negligent; she had been neither confused nor mistaken in voting that Quirino was not negligent; and she had been able to fully understand Question No. 1 and the jury's deliberations on liability. Quirino's opposition was also accompanied by the declaration of his trial attorney, who, on the issue of claimed judicial misconduct, averred the court had treated both sides

6

equally, as shown by reporter's transcript excerpts that he attached to his declaration.

As indicated by a minute order dated March 1, 2022, the court denied Kirk's motion for a new trial after a hearing on the motion. Kirk filed a timely notice of appeal from the judgment.

## DISCUSSION

1. *Kirk Did Not Establish That the Trial Court Found the Verdict Inconsistent with the Evidence*

Kirk contends the trial court should have granted her motion for a new trial because the court had found the jury's verdict was inconsistent with the evidence. She relies on the March 1, 2022 minute order, which, after stating the matter was called for a hearing and the trial court heard the attorneys' arguments, continued, "The Motion for New Trial filed by Gordana Kirk on 02/03/2022 is Denied. [¶] The Court finds insufficient grounds to grant Plaintiff's Motion for New Trial. The Court believes Plaintiff had a fair trial and finds the verdict of the jury is inconsistent with the evidence."

Quirino, disputing Kirk's contention that the trial court had found the verdict was inconsistent with the evidence, essentially argues the minute order contained a clerical error.[1] He points out that the minute order's statement regarding the trial court's finding of inconsistency directly contradicts the minute order's other statements and the ruling.

---

[1] "'The distinction between clerical error and judicial error is "whether the error was made in rendering the judgment, or in recording the judgment rendered."'" (*In re Daoud* (1976) 16 Cal.3d 879, 882.)

7

We agree the minute order's statement regarding the trial court's finding of inconsistency conflicts with the court's ruling and other parts of the minute order and appears to reflect a clerical error. "A ruling by a trial court is presumed correct, and ambiguities are resolved in favor of affirmance." (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631.) Kirk did not designate for inclusion in the appellate record the reporter's transcript of the March 1, 2022 hearing on her motion for a new trial or an agreed or settled statement regarding what transpired at the hearing. Accordingly, she has failed to provide an adequate record to overcome the presumption of the ruling's correctness and establish her contention, and the issue must be resolved against her. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 [the appellant "'has the burden of providing an adequate record'"; "'[f]ailure to provide an adequate record on an issue requires that the issue be resolved against [the appellant]'"]; *Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435 ["'a record is inadequate, and appellant defaults, if the appellant predicates error only on the part of the record he provides the trial court, but ignores or does not present to the appellate court portions of the proceedings below which may provide grounds upon which the decision of the trial court could be affirmed'"].)

> ## 2. *Kirk Failed To Prove More Than One-fourth of the Jurors Disagreed with the Verdict During Polling*

"When a jury is composed of 12 persons, it is sufficient if any nine jurors arrive at each special verdict." (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 255 (*Keener*), italics omitted.) The jury's verdict is signed by the presiding juror and given to the clerk, who reads the verdict and asks the jury whether it is their verdict. (Code Civ. Proc., § 618.) "Either party may require

8

the jury to be polled, which is done by the court or clerk, asking each juror if it is the juror's verdict." (*Keener*, at p. 256.) "The polling process is designed to reveal mistakes in the written verdict, or to show 'that one or more jurors acceded to a verdict in the jury room but was unwilling to stand by it in open court.'" (*Ibid*. ["a juror may change his or her vote at the time of polling"].)

Code of Civil Procedure section 618 provides in part, "If upon inquiry or polling, more than one-fourth of the jurors disagree [with the verdict], the jury must be sent out again, but if no disagreement is expressed, the verdict is complete and the jury discharged from the case." That statutory provision "effectively creates a 'rebuttable presumption: If a verdict *appears* complete, it *is* complete *unless* there is an affirmative showing [during polling] to the contrary.'" (*Keener*, *supra*, 46 Cal.4th at p. 257.) Code of Civil Procedure "section 618 requires *affirmative* disagreement—an utterance, statement, or some similar active conduct—of 'more than one fourth' of the jurors in order to prevent a trial court from finding the verdict to be complete and from then discharging the jury." (*Id*. at p. 259.) "[A] juror's mere *silence* at polling, brought about by the trial court's failure to poll the juror on one of multiple special verdict questions, does not constitute an expressed disagreement with the verdict under section 618." (*Ibid*.)

Kirk contends she is entitled to a new trial because polling of the jurors revealed more than one-fourth of them disagreed with the verdict. Specifically, she asserts that, although nine jurors voted for the verdict in the jury room, five of the 12 jurors expressed disagreement with the verdict in open court: Jurors

9

Nos. 4, 5, 8, 9 and 11. Kirk contends that the court wrongly determined that Jurors Nos. 8 and 9 voted in favor of the verdict.

Kirk forfeited any contention the verdict was invalid because of the votes of Jurors Nos. 8 and 9 by failing to raise any such objection during polling. At the conclusion of polling, the clerk announced the vote was 9 to 3, but Kirk's attorney did not object or seek to question any juror further before the court discharged the jury. To the extent that either Juror No. 8's or Juror No. 9's final vote was unclear, any ambiguity could have been clarified had Kirk timely objected. (See, e.g., *Silverhart v. Mount Zion Hospital* (1971) 20 Cal.App.3d 1022, 1029 [if appellant's attorney "was not satisfied with the polling procedure, or if he believed that the jury was still confused, he should have complained immediately. . . . Since any impropriety could have been cured if raised on time, the failure to object amounted to a waiver of the alleged impropriety or error"]; see also *Keener*, *supra*, 46 Cal.4th at pp. 263, 265-267 ["'[a]n objection to a defective verdict must be made before the jury is discharged'"; approving of *Silverhart* and other authorities requiring timely objection to a defective verdict before discharge of jury to avoid forfeiture if the defect was apparent and could have been corrected].)[2]

Moreover, Kirk failed to meet her burden to demonstrate that Jurors Nos. 8 or 9 disagreed with the verdict during polling. Juror No. 8, when asked if she voted "No" on the first question

---

[2]      Although Kirk's counsel orally told the court on December 13, 2021, that Kirk "would like to make a motion notwithstanding the verdict," he did so only after the jury had already been discharged and on the vague ground of "juror misconduct," without identifying any purported misconduct.

10

regarding Quirino's negligence, initially stated "No." However, on further inquiry Juror No. 8 indicated agreement with the verdict, stating, "Ask—yes." A reasonable interpretation of the record is that Juror No. 8 had initially been confused by the question and upon further inquiry indicated assent to the verdict during polling. (See, e.g., *Keener*, *supra*, 46 Cal.4th at p. 263 ["'all reasonable inferences must be indulged on appeal to support, rather than to defeat, the jury's verdict and the judgment thereon'"].) Kirk did not argue in her motion for a new trial that Juror No. 8 had disagreed with the verdict, instead limiting her argument at that time to Jurors Nos. 4, 5, 9 and 11.

Kirk also failed to establish Juror No. 9 affirmatively disagreed with the verdict during polling. As with Juror No. 8, Juror No. 9 initially answered "No" to the first polling question regarding Quirino's negligence. Nevertheless, Juror No. 9 immediately retracted that response and indicated she believed Quirino was not negligent, and Juror No. 9 did not correct the presiding juror when the presiding juror told the court Juror No. 9 had voted for the verdict. Although Kirk contends the verdict should be invalidated because the presiding juror and not Juror No. 9 stated Juror No. 9's answer during polling, Kirk failed to object on that ground before the jury was discharged.

3. *Kirk Failed To Establish Prejudicial Misconduct by the Trial Court*

Kirk contends the trial court committed judicial misconduct depriving her of a fair, impartial trial. She alleges that the court (1) interfered with her counsel's effective representation of her through erroneous evidentiary and other rulings; (2) made negative comments about her attorney's use of the English language, indicating bias on the basis of ethnicity and national

11

origin; (3) made disparaging comments about her attorney and her attorney's performance; (4) posed its own objections and interfered with Kirk's attorney's examination of Quirino; (5) found Quirino had not admitted fault without allowing the jury to hear Quirino's deposition testimony on the issue; and (6) stated its intent to report Kirk's counsel to the State Bar. As we explain, these allegations largely rest on a misleading summary of what occurred during the trial and omit material context.

"""Although the trial court has both the duty and the discretion to control the conduct of the trial [citation], the court 'commits misconduct if it persistently makes discourteous and disparaging remarks to [a party's] counsel so as to discredit the [party] or create the impression it is allying itself with the [opposing party]' [citation]. Nevertheless, '[i]t is well within [a trial court's] discretion to rebuke an attorney, sometimes harshly, when that attorney asks inappropriate questions, ignores the court's instructions, or otherwise engages in improper or delaying behavior.""" (*People v. Ramirez* (2022) 13 Cal.5th 997, 1078; accord, *Arave v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (2018) 19 Cal.App.5th 525, 536 (*Arave*).) "It is extremely difficult to establish judicial misconduct has risen to the level that requires a new trial." (*Arave*, at p. 536.)

We review assertions of judicial misconduct "on the basis of the entire record." (*People v. Williams* (2021) 60 Cal.App.5th 191, 202; see *Wilson v. Kopp* (1952) 114 Cal.App.2d 198, 207 [explaining, in rejecting plaintiff's contention "that the trial judge was guilty of prejudicial misconduct warranting a reversal," that "[w]e have read the entire record" and "believe it demonstrates that plaintiff received a fair trial, and that the remarks and

actions of the trial judge of which complaint is made could not possibly have affected the verdict"].) "'"[O]ur role . . . is not to determine whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid.  Rather, we must determine whether the judge's behavior was so prejudicial that it denied [the party] a fair, as opposed to a perfect, trial."'" (*Arave*, *supra*, 19 Cal.App.5th at pp. 536-537; see *Williams*, at p. 202 ["[i]f we determine there was misconduct, we then assess whether the misconduct prejudiced [the appellant] such that reversal is warranted"]; see also *People v. Abel* (2012) 53 Cal.4th 891, 914 ["the propriety and prejudicial effect of a particular comment are judged by both its content and the circumstances surrounding it"].)

With limited exceptions, the general rule is that "a specific and timely objection to judicial misconduct is required to preserve the claim for appellate review." (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1320.)

(a) *Allegedly erroneous rulings*

To support her assertion of judicial bias based on the court's interference with her counsel's effective representation, Kirk alleges the court made erroneous rulings on evidentiary and related matters.  We reject her contention that erroneous rulings established judicial bias.  (See, e.g., *Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 674 [rejecting claim of judicial bias based on the contention that "the trial judge made several erroneous legal rulings.  The mere fact that the trial court issued rulings adverse to Brown on several matters in this case, even assuming one or more of those rulings were erroneous, does not indicate an appearance of bias, much less demonstrate actual bias"]; see also *People v. Buenrostro* (2018) 6 Cal.5th 367, 405

13

[""["a] trial court's numerous rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review""""].)

Kirk's attorney submitted a declaration stating that the jurors noticed the court had treated her attorney differently from Quirino's attorney when ruling on evidentiary objections, but Kirk did not submit the declaration of any juror saying so or provide any example of such unequal treatment observed by the jury. Moreover, Kirk failed to provide reasoned argument with citations to the record and authority showing the court erred in any such ruling. She has thus forfeited her contention of judicial bias based on any such error.[3] (See, e.g., *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146 ["'[i]n order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record'"; concluding appellant forfeited many of its claims of error after failing to comply with that requirement]; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].) In any

---

[3]     Different handling of an objection to the exact same question may not necessarily constitute error. For instance, Kirk's attorney throughout the trial asked leading questions on direct examination—questions that may not have been objectionable as leading had they been asked on cross-examination by Quirino's attorney. (See Evid. Code, § 767.) The record is replete with leading questions by Kirk's attorney on direct examination.

event, the record contains numerous examples of the court ruling against Quirino on evidentiary matters.

Kirk contends the trial court improperly refused to switch to the correct video source to allow her counsel to display admitted evidence to the jury during closing argument. However, Kirk's attorney did not ask the court to do so, and forfeited the argument by failing to raise any objection in the trial court. (See *People v. Seumanu*, *supra*, 61 Cal.4th at p. 1320.)

Kirk asserts the court committed judicial misconduct when it did not allow her attorney to draw on a document to demonstrate the position of the vehicles at the moment of collision. The record, however, shows that outside of the jury's presence Kirk's counsel indicated his intent to draw on a document during his opening statement; Quirino's counsel objected; and the court stated it had ordered the parties to meet and confer and disclose the documents they intended to use during opening statements. It ruled Kirk's counsel, having provided Quirino's counsel inadequate notice and failed to comply with the court's requirement, could not alter the document. Kirk did not raise that ruling in the trial court as a basis for her judicial misconduct claim and she fails in her appellate briefing to provide reasoned argument with citations to authority showing how the ruling was improper. Accordingly, she has forfeited it as a basis for finding judicial misconduct.

Kirk contends the trial court erred in instructing her counsel not to "disparage" Quirino's witness Dr. Philip Yuan after Kirk's counsel had argued to the jury that the doctor was "selling his credibility" and "violating his Socratic [*sic*] oath." Again Kirk fails to provide adequate context for the trial court's instruction. Specifically, Kirk omits that her counsel had earlier argued to the

15

jury that Quirino's witnesses were "whores": "This is what they call the . . . —excuse my French—the war of the whores. [¶] . . . [¶] The problem is the whores are only on that side.  They hire them to kill [Kirk's] case.  They give them a lot of money to testify . . . ."

The trial court, in admonishing Kirk's attorney against disparaging witnesses, stated, "I mean, once before you used what you thought was a French word."  The court's instruction to counsel to avoid further disparagement of witnesses was an appropriate exercise of the court's discretion to ensure orderly proceedings and safeguard the dignity of the courtroom.

Finally, Kirk fails to establish prejudice resulted from the allegedly erroneous rulings.  Many of the rulings at issue related to evidence about causation and damages.  For example, she contends the court improperly allowed defense expert Randles to testify on direct examination about the causation of Kirk's claimed medical injuries and improperly limited Kirk's counsel's cross-examination on that issue.  Even if the court had erred in its rulings regarding evidence of causation and damages, however, it would have been immaterial:  The jury never addressed those elements because it found Quirino not negligent.

(b)  *Ethnic or national origin bias*

Kirk's contention of ethnic or national origin bias by the court is also meritless.  Kirk never identifies her ethnicity or national origin or her attorney's ethnicity or national origin.  Nor does she cite anything in the record identifying that information or suggesting that the trial court was aware of it.

Kirk argues the court demonstrated bias when it made negative comments about her attorney's English language use.  She relies on the court's statement, "I don't appreciate your use of

16

the improper use of the English language." As with her earlier arguments, Kirk takes that statement out of context.

Kirk's counsel had argued that a particular passage in Quirino's deposition transcript contained an admission of liability by Quirino. (Notably, Kirk neither set forth the contents of that passage nor included a copy of the transcript pages containing it as part of the record in the trial court or on appeal.) The court apparently disagreed that the passage constituted an admission, and stated to counsel: "Do you remember what I said about the way you play with words? I don't see a question here that he answered as admitting that he caused the accident. I don't see those words here, and I don't appreciate your use of the improper use of the English language. You're drawing a conclusion from your questions. That's your conclusion in your mind." Read in context, the court's statement about improper English language use was in response to what it had determined was Kirk's attorney's misleading characterization of Quirino's deposition testimony, rather than bias. (See *People v. Chatman* (2006) 38 Cal.4th 344, 364 [""'[w]e of course presume the honesty and integrity of those serving as judges"'"].)

Kirk's bias argument also relies on statements that the court made when sustaining objections to her counsel's questions, during which the court explained why the questions were improper. For example, Kirk points to the court's explanation regarding leading questions: "Not 'Do you see,' that's leading. The proper way to ask the question is, 'What does that picture show you or depict?'" Kirk further relies on the following statements to Kirk's attorney during voir dire: "How much time do you need? But I'm going to hold you to cogent, reasonable questions." Nothing in those statements suggests bias on the

basis of ethnicity or national origin.  (See *Guardianship of Baby Boy M.* (1977) 66 Cal.App.3d 254, 278 ["we decline to impute judicial misconduct upon the mere speculation of the parties"].)

(c)    *Disparaging comments*

Kirk contends judicial bias was shown by the court's disparaging comments about her attorney and her attorney's performance.  For example, in her appellate brief she contends the court, on December 8, 2021, disparaged her attorney by apologizing to the jury for "his 'poor performance.'"  The cited portion of the transcript, however, shows the court actually stated "this poor performance," not Kirk's attorney's performance.  A reasonable interpretation of the record is that the court was merely expressing its frustration at the trial's slow pace, which the court blamed on both parties.

The day before, Kirk's attorney had told the court Dr. George Rappard, who was to testify as Kirk's witness on the morning of December 8, "has a very tight schedule, a lot of surgery," and "charges $1500 an hour."  The court emphasized its desire for an efficient trial, stating it did not wish to have "dead time because we worked hard to get this jury to sit still.  From day one, I've been saying I don't want to have dark time."

On the morning of December 8, before the jury entered the courtroom, the court stated Dr. Rappard would testify at 10:30 a.m. and told Quirino's attorney "not to argue with" the court.  Expressing frustration with Quirino's attorney for failing to provide a simple "yes" or "no" answer to a question, the court asked him, "Can you ever answer a question directly?"; stated he

18

had asked Quirino's attorney "a simple question" but "g[o]t a lecture"; and told him, "Thanks for ruining my morning."

Although the court's frustration continued in the jury's presence, it was directed at both parties. After the jury entered, Kirk's attorney called Quirino as the first witness to testify that morning. When her counsel stated his intent to ask Quirino questions, the court told her attorney not to "give . . . lectures" or say what he intended to do and instead to "[j]ust go on with the business." When Quirino was on the witness stand and responded with a narrative to a question that required only a "yes" or "no" answer, the court expressed frustration toward Quirino. Later, when Quirino provided a concise, nonnarrative response, the court stated to Quirino, "See how easy it is?" Before excusing the jury for a 15-minute morning recess at 10:14 a.m., and with Dr. Rappard scheduled to testify at 10:30 a.m., the court told the jury, "I'm sorry about this poor performance. I'm just as frustrated."[4]

Under the circumstances, the court's statement about poor performance reasonably referred to its frustration with the inability by all the participants in the trial to ensure Quirino's testimony would conclude by 10:30 a.m. The court's impatience in the jury's presence with the pace of trial directed at both parties did not constitute misconduct that was prejudicial. Although the court made additional pointed comments to Kirk's counsel about the repetitive nature of his questions after the jury had left the courtroom, those comments also did not constitute prejudicial misconduct. (See, e.g., *People v. Peoples* (2016)

---

[4] At the time, Kirk's attorney had yet to inform the court he was finished examining Quirino.

62 Cal.4th 718, 789 ["[d]espite Judge Platt's failure to comport himself in the manner required by our Code of Judicial Ethics, his misconduct was limited to hearings outside the presence of the jury and thus did not result in a probability of actual bias"].)

Kirk contends the court disparaged her attorney and thus demonstrated bias by stating, "[W]e keep on playing this game. I don't want to play games."  The court's comment was in response to Kirk's counsel asking essentially the same question for which the court had already sustained an objection.  Again, while courts should refrain from expressing irritation at counsel in the presence of the jury, this comment was not misconduct warranting reversal.  (See *People v. Ramirez*, *supra*, 13 Cal.5th at p. 1078; *People v. Snow* (2003) 30 Cal.4th 43, 79 ["the court's occasional impatience with repetitious or vague foundational questions did not convey a judicial bias"]; see also *Ramirez*, at p. 1082 ["'instances of friction . . . "are virtually inevitable in a long trial"'"]; *People v. Nieves* (2021) 11 Cal.5th 404, 482 ["[a] trial court's 'frustration and irritation at counsel's repeated efforts' to violate evidentiary rules can be viewed as "'friction between court and counsel, [that] while not desirable, [is] virtually inevitable in a long trial'""].)

Kirk sets forth additional examples that she contends demonstrate judicial misconduct.  As with the examples above, Kirk fails to establish the court's comments were prejudicial, and the record contains numerous instances in which Quirino's counsel received similar treatment by the court in the jury's presence.  Although the trial court's conduct to both counsel at times "left something to be desired" and some of its comments "would have been better left unsaid" (*Arave*, *supra*,

19 Cal.App.5th at p. 537), we conclude Kirk failed to establish prejudicial misconduct warranting a new trial.

(d) *Posing objections and interfering with examination*

Kirk contends the court committed misconduct by posing its own objections to her attorney's questions and interfering with Kirk's attorney's witness examinations. However, the examples in Kirk's brief demonstrate the impropriety of her counsel's questions. For example, Kirk's attorney asked Dr. Yuan, "Do you experience that, Doctor, when you examine somebody, and you're about to touch them and you're touching them at a—at an area where it is painful for them, and you tell them that you're about to touch them, and what they say—they cringe, even before you touch them, anticipating the pain—have you ever experienced that with patients?" Quirino's attorney objected. The court stated, "That's irrelevant and immaterial. I'm posing my own objection. Where are you going with this?"

The court was even-handed in limiting inefficient questions by both counsel. For example, when the court perceived that Quirino's attorney was conducting an inefficient examination of a witness, the court objected stating, "Counsel, where are we going? Do you want to go to Hawaii?"

Kirk's contention that the court improperly interfered with her attorney's cross-examination of Quirino is also unavailing. Under questioning by Kirk's counsel, Quirino initially referred to the accident at having occurred at the wrong location, the "cross streets La Cienega Boulevard and Inglewood—North Inglewood." Kirk's attorney asked, "And La Cienega?" When Quirino replied, "Correct," the court stated, "Incorrect." Kirk's attorney said, "I'm sorry?" The court asked, "Did you hear what you said?" and repeated, "La Cienega." Kirk's attorney told the court he

intended to refresh Quirino's memory. The court asked, "Did this accident happen on Inglewood and La Cienega?" Kirk's attorney stated, "No, it happened on Centinela." Quirino said, "Centinela." The court stated, "I thought I was losing my mind. Nice to know." Quirino said, "Yeah, Centinela and Inglewood."

Contrary to Kirk's assertion, the portion of the transcript on which she relies merely shows the court's attempt to clarify testimony and prevent misunderstanding; it does not demonstrate judicial misconduct. That the accident occurred at the intersection of Inglewood and Centinela, not La Cienega, had been undisputed by the parties, as shown by their proposed statement of the case and told by the court to the prospective jurors, without objection, prior to voir dire. (See *People v. Monterroso* (2004) 34 Cal.4th 743, 780 ["'[t]he court may make any comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the cause,'" citing Article VI, section 10 of the California Constitution]; *People v. Carlucci* (1979) 23 Cal.3d 249, 256 [trial court is authorized to "'participate in the examination of witnesses whenever he believes that he may fairly aid in eliciting the truth, in preventing misunderstanding, in clarifying the testimony or covering omissions, in allowing a witness his right of explanation, and in eliciting facts material to a just determination of the cause'"]; Evid. Code, § 775 ["[t]he court, on its own motion or on the motion of any party, may call witnesses and interrogate them the same as if they had been produced by a party to the action"].) Moreover, although Kirk asserts that the court's participation had prevented her counsel from effectively impeaching Quirino, she fails to show prejudice: Quirino had misspoken about an undisputed and uncontroversial topic.

22

(e)  *Quirino's alleged admission of fault*

At the trial Kirk's attorney asked Quirino whether it was true that, during his deposition, Quirino had admitted he was at fault for the accident.  Quirino's counsel objected.  In sustaining the objection, the court instructed Kirk's attorney, "If that's what he admitted at his deposition, read it."  Kirk's attorney declined to read the relevant deposition excerpt into the record.

Kirk asserts the court, by finding Quirino had not admitted fault without allowing the jury to hear Quirino's deposition testimony on the issue, committed misconduct and violated her state constitutional right to have the jury determine every material issue presented by the evidence.  But the court did not preclude Kirk from reading the deposition to the jury; it only determined that Kirk's counsel's question was improper for mischaracterizing Quirino's deposition testimony.  Kirk's counsel persisted in attempting to *describe* the deposition as an admission without asking proper questions.  In any event, because Kirk failed to include in the record the excerpt of Quirino's deposition transcript on which her argument relies, she has provided an inadequate record to review the claim of prejudicial misconduct.  (See, e.g., *Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348 ["[f]ailure to provide an adequate record on an issue requires that the issue be resolved against appellant"; "principle stems from the well-established rule of appellate review that a judgment or order is presumed correct and the appellant has the burden of demonstrating prejudicial error"]; see also *Baker v. Children's Hospital Medical Center* (1989) 209 Cal.App.3d 1057, 1060 ["the reviewing court presumes the judgment of the trial court is

23

correct and indulges all presumptions to support a judgment on matters as to which the record is silent"].)

(f) *Report to the State Bar*

Kirk contends the court committed misconduct when it told her attorney, "[I]f you're going to insist on arguing with me, I will report you to the State Bar for making an accusation that you cannot back up. I don't want to do that."[5] While such a statement made in front of the jury may indeed amount to misconduct, Kirk omits from her brief that the court's statement was made outside the presence of the jury. Kirk failed to establish the court's statements outside the jury's presence constituted prejudicial misconduct. (See *People v. Silveria and Travis* (2020) 10 Cal.5th 195, 323-325 [no judicial bias or misconduct when the judge, outside the jury's presence, reprimanded counsel and, in an effort to control what it perceived to be inappropriate conduct by the attorney, told him it would hold him in contempt if he did not sit down]; *People v. Peoples, supra,* 62 Cal.4th at p. 789 ["[d]espite Judge Platt's failure to comport himself in the manner required by our Code of Judicial Ethics, his misconduct was limited to hearings outside the

---

[5] The accusation to which the court referred was one that it perceived Kirk's attorney had improperly made against a witness. Kirk's attorney argued with the court on that issue.

24

presence of the jury and thus did not result in a probability of actual bias"].)

    4. *Kirk Failed To Establish the Evidence Compelled a Finding in Her Favor as a Matter of Law and Forfeited Her Remaining Arguments*

Kirk contends the jury's verdict that Quirino was not negligent was not supported by the evidence. Her contention is flawed.

As the plaintiff, Kirk had the burden of proof on her negligence claim against Quirino. (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205.) When, as here, "'"the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals,'" generally "'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'"'" (*Phipps v. Copeland Corp. LLC* (2021) 64 Cal.App.5th 319, 333; accord, *SwiftAir, LLC v. Southwest Airlines Co.* (2022) 77 Cal.App.5th 46, 59 [affirming judgment in an appeal challenging the trial court's denial of posttrial motions, including a motion for new trial].) Kirk failed to meet this burden. To the contrary, her argument that the evidence compelled a finding of Quirino's negligence relied on evidence that was contradicted or impeached during trial, and Kirk pointed out those contradictions in her brief.

Elsewhere in her appellate briefing, Kirk raises additional, conclusory contentions without providing cogent argument, legal

analysis, or citations to the record or authority and has therefore forfeited the arguments.  For example, she alleges that the court erred in instructing the jury by paraphrasing the jury instructions.  However, she cites only an excerpt of the record during jury selection (and does not cite the record showing the instructions given to the empaneled jury), and she fails to provide reasoned argument with citations to authority showing why the language used by the court during jury selection was incorrect or prejudicial.  Similarly, in part of a heading of her opening appellate brief, Kirk contends that the jury's verdict was contrary to law—specifically, Vehicle Code section 21801, subdivision (a).  She fails, however, to support that conclusory assertion with any reasoned argument or legal analysis.

## DISPOSITION

The judgment is affirmed.  Quirino is to recover his costs on appeal.


EVENSON, J.[*]

We concur:


SEGAL, Acting P. J.


MARTINEZ, J.

---

[*]    Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.